

SEALED

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KONINKLIJKE PHILIPS ELECTRONICS N.V., a Netherlands Corporation,<br><br>             Plaintiff,<br><br>vs.<br><br>KXD TECHNOLOGY, INC.; ASTAR ELECTRONICS, INC.; SHENZHEN KXD MULTIMEDIA CO., LTD.; SHENZHEN KAIXINDA ELECTRONICS CO., LTD.; KXD DIGITAL ENTERTAINMENT, LTD.; JINGYI LUO, a/k/a JAMES LUO; SUNGALE GROUP, INC.; SUNGALE ELECTRONICS (SHENZHEN), LTD.; AMOI ELECTRONICS, INC.; AMOI ELECTRONICS CO., LTD.; AMOI ELECTRONICS, LTD.; CHINA ELECTRONICS CORPORATION; AMOISONIC ELECTRONIC ELECTRONICS, INC.; INTERNATIONAL NORCET TECHNOLOGY, INC.; NORCENT HOLDINGS, INC.; SHANGHAI HONGSHENG TECHNOLOGY CO., LTD.; SHENZHEN NEWLAND ELECTRONIC INDUSTRY CO., LTD.; DESAY A&V (USA), INC.; DESAY A&V SCIENCE & TECHNOLOGY CO., LTD.; DESAY HOLDINGS CO., LTD.; XORO ELECTRONICS (SHANGHAI), LTD.; SHENZHEN XORO ELECTRONICS CO., LTD.; MAS ELEKTRONIK AG CORPORATION; SHENZHEN ORIENTAL DIGITAL TECHNOLOGY CO., LTD.; and JOHN DOES 1 THROUGH 20,<br><br>             Defendants. | Case No.: 2:05-cv-01532-RLH-GWF<br>Case No.: 2:06-cv-00101-RLH-GWF<br><br>***NUNC PRO TUNC* CORRECTION OF O R D E R**<br><br>(Motion for Civil Contempt Sanctions Against KXD Technology, Inc., Astar Electronics, Inc., Shenzhen Kxd Multimedia Co., Ltd., Shenzhen Kaixinda Electronics Co., Ltd., Kxd Digital Entertainment, Ltd., Jingyi Luo, a/k/a James Luo, and Astar Electronics USA, Inc.–#424) |

1

1  On February 12, 2007, this Court entered an order imposing sanctions on the KXD
2  Defendants. (Dkt. #541 & #542.) The Plaintiff brought a internal contradiction to the Court's
3  attention. The Order originally read on page 9, lines 5-6: "Each of the KXD Defendants shall
4  submit to an audit of all transactions of any kind, during regular business hours, and the KXD
5  Defendants shall bear the costs of these audits." (Dkt. #541 & #542.) The Court corrects its
6  previous order to now read: "Each of the KXD Defendants shall submit to an audit of all
7  transactions of any kind. The audits shall take place during regular business hours." (Order, *infra*,
8  p. 9, ll. 14-15.)

\* \* \*

Before the Court is Plaintiff's **Motion for Civil Contempt Sanctions Against KXD Technology, Inc., Astar Electronics, Inc., Shenzhen Kxd Multimedia Co., Ltd., Shenzhen Kaixinda Electronics Co., Ltd., Kxd Digital Entertainment, Ltd., Jingyi Luo, a/k/a James Luo, and Astar Electronics USA, Inc.** (#424), filed October 11, 2006. The Court has also considered the KXD Defendants' Opposition (#444), filed November 14, 2006, and Plaintiff's Reply (#448), filed November 28, 2006. Oral argument was held on January 26, 2007.

### BACKGROUND

On January 5, 2006, the Court issued an amended Temporary Restraining Order (TRO) to protect Plaintiff's DVD+ReWritable & Design trademark (Reg. No. 2,610,036) ("DVD+ReWritable & Design mark"). A depiction of the mark was attached to the TRO as Exhibit 1. The TRO prevented Defendants, and all persons and entities in participation with Defendants who received actual notice of the order, from "assisting or inducing, directly or indirectly" the following activities: "Manufacturing, importing, exporting, distributing, shipping, introducing into commerce, offering for sale, selling, returning, disposing of, packaging, re-packaging, marketing, advertising, or supplying any goods that bear, embody, display, or affix the DVD+ReWritable & Design mark;" (Dkt. #39, 6.) It is hard to imagine how the Court could have been more clear. The TRO further ordered each of the Defendants to file within thirty days "a

report in writing and under oath setting forth in detail the manner and form in which compliance with this [TRO] was made." (*Id.* at 8.)

On January 12, 2006, there was a hearing to show cause and to determine whether the Court should issue a preliminary injunction. At the January 12 hearing the Court granted the Defendants an extension to a new hearing date: March 9, 2006. Until that time it was understood the TRO would remain in force and Defendants did not object.

After the hearing on March 9, the Court issued the preliminary injunction (Dkt. #252) on March 15, 2006. The preliminary injunction basically prevented the same behavior that was prohibited in the TRO. However, the preliminary injunction added a requirement that each Defendant should "provide the Court and Philips' counsel with a report setting forth an inventory containing the identity and amount of items recalled no later than thirty (30) calendar days." (Dkt. #252, 6). The preliminary injunction also required the Defendants to once again file with the Court, and serve upon opposing counsel, "a report in writing and under oath setting forth in detail the manner and form in which compliance with this Order was made." (Dkt. #252, 6.) The preliminary injunction gave the Defendants sixty days to complete this filing.

On April 10, 2006, the Court issued a sealed order granting additional seizures against the Defendants against whom sanctions are sought in this Motion. The seizures yielded much of the evidence submitted to the Court in the current Motion. Having gathered this evidence, Plaintiff now moves the Court to grant civil contempt sanctions against the appropriate KXD Defendants. For the reasons discussed below, the Court grants the Motion in part and denies it in part.

**DISCUSSION**

<u>Standard</u>

"Civil contempt sanctions . . . are employed for two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992). "If a sanction

3

1  operates whether or not a party remains in violation of the court order, it does not coerce
2  compliance. 'The power to impose coercive sanctions to compel obedience to an order in a civil
3  contempt is limited by the individual's ability to comply with the court's order.'" *Id.* (citations
4  omitted). In applying a civil contempt sanction, the Court must consider the "probable
5  effectiveness of any suggested sanction in bringing about the result desired." *Id.* Civil contempt
6  sanctions are thus remedial rather than punitive.

7  "If a person disobeys a specific and definite court order, he may properly be
8  adjudged in contempt." *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir.
9  1987). Failing to take all reasonable steps to ensure compliance with a court order can establish
10 contempt. *Id.* Contempt does not require willfulness. *Id.*

11 <u>Sanctions Sought</u>

12  In the case at bar the Court notes there is abundant evidence of the Defendants'
13 non-compliance and active violations of both the TRO and preliminary injunction. Defendants fail
14 to adequately explain why they acted with such disregard. One strained explanation that
15 Defendants assert is that the Court did not rule on the issue of personal jurisdiction until June 27,
16 2006. (*See* Dkt. #348.) Defendants assert that "[a]t the time of any alleged violations, there was a
17 good faith issue as to whether the Court had personal jurisdiction over the Defendants." (Opp'n,
18 22-23.) However, this excuse completely fails to explain why Defendants have *still* not complied
19 with the preliminary injunction more than seven months after the Court's order on the issue of
20 personal jurisdiction. No reports have been filed with the Court detailing how compliance with
21 the preliminary injunction has been achieved. Furthermore, this strained explanation is contrary to
22 law. "If the [Defendants] believed that the district court incorrectly issued an order, their remedy
23 was to appeal and request a stay pending the appeal." *In re Crystal Palace Gambling Hall*, 817
24 F.2d at 1365. Defendants never requested a stay of the TRO or the preliminary injunction.
25 Therefore, Defendants were bound by the requirements of those orders.
26

AO 72
(Rev. 8/82)

4

Plaintiff seeks multiple sanctions to be imposed on these Defendants. Plaintiff also seeks to hold the Defendants jointly and severally liable; each is discussed below.

**1. Attorneys Fees - $353,611.70**

Civil sanctions are imposed to "compensate the complainant for losses sustained." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992). The attorneys fees submitted by Plaintiff have been thoroughly described and substantiated. (Dkt. #430.) The attorneys fees are related to bringing the Defendants' contemptuous actions to the Court's attention. Therefore, the Court will grant that attorneys fees be paid in the amount of $353,611.70.

The attorneys fees shall be paid within fourteen (14) days of the entry of this Order. Proof of the payment shall be presented to the Court within three (3) days of payment.

**2. Seizure and Storage Costs - $37,098.14**

Having fully reviewed Tim Santoni's declaration in support of Plaintiff's Motion (Decl. of Tim Santoni, Dkt. #429), the Court finds the amount petitioned here is also well documented, and reasonable given the amount of work required of the investigators and quantity of merchandise that has been seized to date. In order to compensate Plaintiffs, the Court grants Plaintiff's Motion for sanctions on this point in the amount of $37,098.14. The costs shall be paid within fourteen (14) days of the entry of this Order. Proof of the payment shall be presented to the Court within three (3) days of payment.

**3. Royalties Losses (Damages) - $1,284,090.00**

Use of the Lanham Act in structuring a civil contempt sanction based on trademark infringement has been affirmed. *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1519 (11th Cir. 1990) (approving the use of the Lanham Act as a guide for civil contempt sanctions). There is obviously good reason in doing so given that the act will largely govern a plaintiff's award in such a case. 15 U.S.C. § 1117. Furthermore, it makes sense that the Lanham Act's recovery could be used as a guide since the act also grants courts the authority to enforce injunctive relief in

trademark cases through contempt proceedings. 15 U.S.C. § 1116(a). Therefore, the Court chooses to be guided by the Lanham Act in constructing its contempt sanction in this case.

The Lanham Act provides a broad ability for Courts to assess damages based on the circumstances of the case:

> [P]laintiff shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. . . . In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. *In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.* If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.

*Id.* at § 1117(a) (emphasis added). Furthermore, the Lanham Act provides that once the damages or a defendant's profits are determined, whichever is greater "shall" be trebled when an infringing mark is used "in connection with the sale, offering for sale, or distribution of goods or services." *Id.* at § 1117(b). Therefore, Congress determined that offering for sale, and distributing goods, could also be relevant in determining damages. These actions can be enjoined because they are damaging to a plaintiff's business. *See also id.* at § 1116(d)(1)(A) (allowing for an injunction to issue in cases where one party is "using a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services" upon an ex parte application). It is also readily apparent from the language of the statutes that Congress was determined to deter this offensive conduct by enforcing serious financial repercussions, which are compensatory by statutory definition. *Id.* at § 1117(a).

The Court notes that the Hearing on this Motion provided more insight on the issue of damages, profits, and the use of the Lanham Act. Both parties were heard on the issue.

Though it would be difficult to precisely state the damages in this case, the evidence submitted shows that the $1,284,090.00 petitioned in the Plaintiff's Motion and "Proposed Order" (Dkt. #425) is very conservative. The numerous shipments and volume of

AO 72
(Rev. 8/82)

products bearing the infringing mark constitutes significant circumstantial evidence of many sales in violation of this Court's orders. Furthermore, overt sales have been recorded, Defendants have encouraged sales through multiple promotions, there is evidence of multiple offers to sale, goods with the offending mark have been used as samples to potential buyers, the list of offenses continues. (Decl. Cynthia M. Nezik, Dkt. #426-427.) In its Motion, Plaintiff claims that royalties losses are $428,030.00 and by statute should be increased to $1,284,090.00. The Court is not prepared to make a finding as to the precise royalties losses or damages at this time, but the Court does note enough substance in the Plaintiff's argument at the Hearing on this matter to find that royalties losses and other damages could easily surpass $428,030.00 for the infractions listed above. At the hearing Plaintiff also argued that under the profits analysis of the Lanham Act, the Court would be justified in awarding several million dollars. This may very well be true, but Plaintiff's Motion only petitioned for $428,030.00 to be trebled. Therefore, the Court trebles just this amount of damages pursuant to the statute and grants a sanction for damages in the amount of $1,284,090.00. The damages shall be paid within fourteen (14) days of the entry of this Order. Proof of the payment shall be presented to the Court within three (3) days of payment

        The Court also notes its disappointment in the Defendants' reasoning on this claim. Defendants seem to admit that they have offered to sale offending items, offered incentives to sale offending items, shipped offending items, that some number of the items were defective, but that the losses cannot be proved to the extent Plaintiff seeks. All of these infractions can be construed as damaging Plaintiff's business. The Court brings to Defendants' attention that the behavior Defendants seemingly admit could also justify criminal contempt sanctions from the Court. The Court has chosen not to levy criminal sanctions at this time; however, Defendants are now on notice that the Court will consider levying criminal contempt sanctions if evidence surfaces of other egregious or continued violations of this Court's orders.

////

////

### 4. Per Diem Sanction - $10,000.00 per day

Of great concern to the Court is the Defendants' unexcused failure to file the detailed reports ordered in the TRO and preliminary injunction. Even with Plaintiff bringing this failure to the Defendants' attention in the current Motion, Defendants have still not filed a detailed report of the steps taken to comply with the preliminary injunction. The Court therefore finds that a $10,000 per diem sanction is appropriate. Hopefully it will be enough to persuade Defendants to file the reports. If not, the Court may increase this sanction at a later date.

The per diem sanction will begin fourteen (14) days from the entry of this order, and will continue to run until the detailed reports discussed in the preliminary injunction are filed with the Court, the bond discussed in this Order is posted, the attorneys fees, the seizure and storage costs, and the damages discussed in this Order are paid to Plaintiff and certification of payment is filed with the Court.

### 5. Fine for any Future Violation - $25,000.00

The Court does not want to tie its hands for future violations. Given the evidence submitted here, the Court may desire to impose criminal sanctions next time, or an even greater fine than $25,000. The Court is aware that the same conduct may constitute both civil and criminal contempt. *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 n.3 (9th Cir. 1983). The Court in its discretion has limited itself at this time to civil sanctions with hope that the sanctions in this Order will persuade the Defendants to comply with the orders already issued. Therefore, the "Fine for any Future Violation" will be denied at this time.

### 6. Audits

Defendants assert that Plaintiff should not be allowed to conduct audits or unannounced inspections. Defendants argue that *Jerry's Famous Deli, Inc. v. Papanicolaou*, 383 F.3d 998 (9th Cir. 2004), is not applicable because in that case the defendant "continued to breach the trademark despite a restraining order preventing him from doing so." (Opp'n, 22.) Defendants boldly assert:

AO 72
(Rev. 8/82)

8

> Here, KXD have [sic] abided by the PI and TRO order against it. At the time of any alleged violations, there was a good faith issue as to whether the Court had personal jurisdiction over the Defendants. Defendants have not wilfully violated the terms of the Court order and have made reasonable efforts to comply.

(Opp'n, 22-23.) However, this is simply *not* true. Defendants have *not* abided by the preliminary injunction's mandate to file a detailed report. There is also ample evidence to suggest that Defendants have *not* made "reasonable efforts to comply" with the Court's orders but have instead operated with blatant disregard of the Court's orders. Furthermore, as stated above, contempt does not require willfulness. *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987).

Therefore, the Court finds that *Jerry's Famous Deli, Inc.*, does apply and that an auditor would be appropriate in this instance. The audit will help to determine the profits made by selling the offending products and also whether the parties truly are in compliance with the preliminary injunction.

Each of the KXD Defendants shall submit to an audit of all transactions of any kind. The audits shall take place during regular business hours. The parties have seven (7) days from the entry of this Order to agree upon an auditor and submit the auditor's qualifications to the Court. If the parties have not agreed upon an auditor within this specified time, each of the parties shall instead submit a list of proposed auditors, including a summary of each of the proposed auditor's qualifications, within nine (9) days of the entry of this Order.

Plaintiff proposes that it be allowed four (4) audits per year per Defendant. The Court will allow for one (1) initial audit per Defendant at this time, and will afterwards be open for a motion for further audits if sufficient evidence of noncompliance is discovered. The Court desires that these initial audits take place as soon as possible and with the Defendants' complete cooperation. The audits must be conducted pursuant to the restrictions in the protective order.

The Plaintiff shall bear the cost of the audit. If more evidence of violations is discovered through the audit, the Court will be open to consider remuneration by the Defendants.

AO 72
(Rev. 8/82)

### 7. Unannounced Inspections

Given the disturbing amount of evidence of the Defendants' nonchalant attitude towards this Court's orders, the Court finds it reasonable to order unannounced inspections to ensure compliance with the preliminary injunction. Plaintiff has requested four (4) such unannounced inspections, per Defendant, per year. The Court will grant two (2) unannounced inspections, per Defendant, to take place within one calendar year of the initial audit.

The unannounced inspections will be conducted at the discretion of Plaintiff. Defendants shall make their premises, books, records and all other data available for inspection and copying by Plaintiff. The inspections shall be conducted during Defendants' regular business hours.

Plaintiff cites *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1535 (11th Cir. 1986), in hopes that the Court will order the Defendants to bear the costs of the unannounced inspections. (Mot. 29.) However, the *Sizzler Family Steak Houses* complete rule is that the costs of such inspections can be reimbursed only after plaintiff's efforts expose non-compliance:

> This rule is sensible as well as binding. It provides parties with an added incentive to monitor and enforce an opponent's compliance with a court order by allowing them to recover their expenses in exposing noncompliance. Yet by conditioning reimbursement on enforcement success, it discourages parties from wasting resources on scavenging for nonexistent violations.

*Id.* at 1534. The Court agrees with the reasoning of this rule and therefore the Plaintiff will bear the initial costs of the inspections. If Plaintiff's inspections reveal further evidence of Defendants' non-compliance with this Court's orders then the Court will consider remuneration by Defendants for the costs of the inspections.

### 8. Bond to be Posted - $2,000,000.00

The Defendants shall post a bond in the amount of $2,000,000.00.

////

////

AO 72
(Rev. 8/82)

10

**9. Jointly and Severally Liable**

From the evidence in the record and structure of the Defendants' corporations, it appears that Defendants acted in concert in their violations of this Court's orders. Therefore, joint and several liability will be imposed.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Plaintiff's Motion for Civil Contempt Sanctions Against KXD Technology, Inc., Astar Electronics, Inc., Shenzhen KXD Multimedia Co., Ltd., Shenzhen Kaixinda Electronics Co., Ltd., KXD Digital Entertainment, Ltd., Jingyi Luo, a/k/a James Luo, and Astar Electronics USA, Inc. (#424) is GRANTED in part and DENIED in part as follows:

1. Attorneys Fees - $353,611.70 - GRANTED;

2. Seizure and Storage Costs - $37,098.14 - GRANTED;

3. Royalties Losses (Damages) - $1,284,090.00 - GRANTED;

4. Per Diem Sanction - $10,000.00 per day - GRANTED;

5. Fine for any Future Violation - $25,000.00 - DENIED;

6. Audits - GRANTED (1 per Defendant);

7. Unannounced Inspections - GRANTED (2 per Defendant);

8. Bond to be Posted - $2,000,000.00 - GRANTED;

9. Joint and Several Liability - GRANTED.

Dated: February 14, 2007.

ROGER L. HUNT
United States District Judge

11

AO 72
(Rev. 8/82)