# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

KONINKLIJKE PHILIPS ELECTRONICS )
N.V., a Netherlands corporation, )
                                                  Plaintiff, )    Case No. 2:05-cv-01532-RLH-GWF
vs. )    **ORDER**
KXD TECHNOLOGY, INC., et al., )
                                                  Defendants. )

This matter is before the Court on Defendant Sungale Group's Motion to Compel Discovery From Plaintiff Koninklijke Philips Electronics (#470), filed December 11, 2006; Plaintiff's Opposition to Defendant Sungale Group's Motion to Compel Discovery From Plaintiff Koninklijke Philips Electronics (#499), filed December 29, 2006, and Defendant Sungale Group's Reply to Motion to Compel Discovery From Plaintiff Koninklijke Philips Electronics (#518), filed January 12, 2007. The Court conducted a hearing on this motion on January 12, 2007.

## BACKGROUND

On September 21, 2006, Defendant Sungale Group served requests for production and interrogatories on Plaintiff Koninklijke Philips Electronics. Plaintiff served its responses to Sungale's requests for production and responses to interrogatories on October 23, 2006. *Motion to Compel* (#470), *Exhibits "1"* through *"4"*. On October 23, 2006, Sungale's counsel sent Plaintiff's counsel a "meet and confer" letter regarding the deficiencies in Plaintiff's discovery responses and proposed a meet and confer conference on November 2, 2006. *Motion to Compel* (#470), *Exhibit "5"*. The meet

and conference was subsequently postponed and then conducted on November 15, 2006. During the intervening period, Plaintiff sent the Sungale and KXD Defendants, who are represented by the same counsel, meet and confer letters regarding their discovery responses. *See Orders* (#568 and #581). Counsel for the parties engaged in a five hour telephonic conference on November 15, 2006 regarding both sides discovery responses. According to Plaintiff's counsel, all but 30 minutes of the conference concerned discussion of the Defendants' discovery responses. According to the Sungale Defendant's counsel, during this conference Plaintiff agreed to supplement its responses to requests for production of documents and interrogatories.

Plaintiff's objections to Sungale's discovery requests were based, in part, on the confidential, proprietary or trade secret nature of documents or information sought by Sungale and the absence of a confidentiality protective order governing the disclosure and use of privileged information. Although Defendant agreed to the terms of a stipulated protective order drafted by Plaintiff's counsel, there was disagreement between Plaintiff's and Defendant's counsel whether a provision of the protective order would allow Defendant's counsel to provide highly confidential information to Defendant's in-house counsel or representatives. This issue was apparently resolved on or about December 20, 2006 when Defendant's counsel agreed to execute a separate letter regarding disclosure of highly confidential information to in-house counsel or representatives. The stipulated protective order was approved by the Court and filed on December 22, 2006, *see Stipulated Protective Order* (#495). The Sungale Defendants argue that despite the filing of the Stipulated protective order on December 22, 2006, Plaintiff still did not produce any documents until January 10, 2007, two days prior to the hearing on Defendant's motion.

Notwithstanding the filing of the Stipulated Protective Order, Plaintiff still objects to many of Defendant's discovery requests on the grounds that the information it seeks to discover from Plaintiff is irrelevant and/or that Sungale has not demonstrated substantial need to obtain privileged trade secret documents and information to overcome Plaintiff's privilege objections and require production of trade secret information. The parties also disagree whether following the November 15, 2006 conference Defendant's provided a sufficient basis in her December 4, 2006 letter for the relevance of the documents and information that Defendant seeks from Plaintiff. Another issue that allegedly delayed

Plaintiff's production of documents was whether Defendant would agree to pay copying charges for the documents that Plaintiff indicated it would be willing to produce. As in the previous discovery motions between the parties, both sides blame each other for not engaging in a meaningful and good faith effort to resolve their disputes without the requirement for court action.

## DISCUSSION

As discussed in the Court's Order (#568) regarding Plaintiff's motion to compel against the Sungale Defendants, Fed.R.Civ.Pro. 37(a)(2)(B) and LR 26-7 require the movant to confer or attempt to confer in good faith with the opposing party in an effort to secure the information or material without court action. *See Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 170 (D. Nev. 1996). *Cotacom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D.Kan. 1999), states that the parties must make genuine efforts to resolve their dispute by determining precisely what the requesting party is actually seeking; what responsive documents or information the discovering party is reasonably capable of producing; and what specific, genuine objections or other issues, if any, cannot be resolved without judicial intervention.

In the Court's judgment, the parties' meet and confer efforts in this case failed to comply with the requirements described by the court in *Cotacom Commodity Trading Co.* Instead, the parties' exchanges of communications following their meet and confer conference on November 15, 2006 consist primarily of each accusing the other of not making a good faith effort to resolve their discovery disputes without judicial intervention. For example, Plaintiff raises as an issue for the delay in producing documents Defendant's alleged failure to advise whether it would pay reasonable copying charges for the documents. Defendant, in turn, argues that it was always willing to pay reasonable copying charges. This is an issue that could and should have been promptly resolved between counsel and not have delayed production of documents.

Likewise, the Court sees no legitimate reason why it took weeks for the parties to resolve their disagreement over the construction of the provision of the Stipulated Protective Order. The Court notes, however, that Defendant's counsel does not dispute that she initially chose to construe the provision of the protective order as permitting Defendant to provide "highly confidential" documents to its in-house counsel and representatives. This was a not reasonable construction of the protective order

and, therefore, delay in producing highly confidential documents because of this construction rests with Defendant. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992); *Mikohn Gaming v. Acres Gaming, Inc.*, 1998 WL 1059557 (D.Nev.).

The Sungale Defendants accuse Plaintiff of making the same type of unsupported "boilerplate" objections that Plaintiff accused the Sungale Defendants of making in their discovery responses. Both parties cited the same case law regarding the invalidity of such objections in their respective motions. As this Court stated in its previous orders, the party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome or not relevant. *Graham v. Casey's General Stores*, 206 F.R.D. 251, 253-4 (S.D.Ind. 2000). To meet this burden, the objecting party must specifically detail the reasons why each request is irrelevant. *Id.,* citing *Schaap v. Executive Indus., Inc.*, 130 F.R.D. 384,387 (N.D. Ill. 1990). *Walker v. Lakewood Condominium Owners Assoc.,* 186 F.R.D. 584, 587 (C.D. Cal. 1999) further states:

> Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all. *See Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3rd Cir. 1982) ("mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection"); *Cippollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986) (objecting party must show a particularized harm is likely to occur if the requesting party obtains the information that is the subject of the particular objections; generalized objections are insufficient).

*Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186 (C.D. Cal. 2006), further states that boilerplate relevancy objections that do not set forth any argument or explanation why the requested documents are irrelevant are also improper. The fact that the opposing party makes such objections in its discovery responses does not entitle a party to also make such objections.

Although the Court is not satisfied that either party has engaged in meaningful, good faith attempts to resolve their discovery disputes, in the interest of moving this case toward completion of discovery and resolution, the Court will consider Defendant's motion to compel on its merits. The Court, however, will not award fees and costs to either party in respect to this motion.

The Court addresses and decides the specific discovery requests set forth in Defendant's motion as follows:

. . .

**A.     Defendant's Requests for Production:**

**Request Nos. 1, 2:**  Request No. 1 requests all documents that support each element alleged in Plaintiff's Complaint.  Request No. 2 requests all documents identified in Plaintiff's initial disclosures.  As set forth in the Court Order (#568) regarding similar requests served by Plaintiff, the Court views Request No. 1 as overbroad. *See Kidwilder v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193 (N.D.W.Va. 2000); *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 186-87 (D. Kans. 1997); *Grynberg v. Total S.A.*, 2006 WL 1186836 (D.Colo. 2006) *6.  The Court upholds Request No. 1 and orders that Plaintiff further respond to it, to the extent it requests production of documents that Plaintiff is obligated to produce pursuant to Fed.R.Civ.Pro. 26(a)(1)(B) and which have not already been disclosed or produced.  Plaintiff is also ordered to further respond to Request No. 2, as necessary, consistent with this order.

**Request No. 3:**  Request No. 3 requests all documents sufficient to identify Plaintiff's affiliated entities.  The Court upheld a substantially identical request made by Plaintiff to Defendants. *See Order* (#568).  Plaintiff alleges that Defendants and their affiliated entities have distributed counterfeit products in violation of Plaintiff's trademark.  The Court therefore found Plaintiff's requests that Defendants identify or produce documents sufficient to identify their affiliated entities relevant and discoverable.  Defendants argue that they are entitled to discover similar information from Plaintiff based on their affirmative defense that they had an implied license due to goods purchased from Plaintiff's licensees and/or affiliated entities.  The Court finds that documents sufficient to identify Plaintiff's affiliated entities is not so overbroad or burdensome on its face, or requires Plaintiff to divulge trade secret information.  Plaintiff is, therefore, ordered to respond to this Request by providing a list or other documents sufficient to identify its affiliated entities.

**Request No. 4:**  Request No. 4 requests all documents sent to Plaintiff from the U.S. Patent and Trademark Office, including but not limited to office actions.  This request is overbroad on its face since it is not limited to the "TRADEMARK-IN-SUIT."  The Court, however, orders Plaintiff to respond to this request as it relates to the "TRADEMARK-IN-SUIT."

**Request No. 5:**  Request No. 5 requests all documents in Plaintiff's custody and control from Sony Kabushiki Kaisha or Sony Corporation of America Regarding the "TRADEMARK-IN-SUIT."  This request is overbroad. The Court, however, orders Plaintiff to respond to this request by producing

documents relevant to whether Sony assigned its rights to the "TRADEMARK-IN-SUIT" to Plaintiff such that Plaintiff is the owner of the "TRADEMARK-IN-SUIT."

**Request No. 7:**   Request No. 7 requests all documents concerning any intellectual property programs which license or permit the use of the "TRADEMARK-IN-SUIT," either individually or in combination with any other trademark and/or patent.  This request only seeks production of documents that describe Plaintiff's intellectual property programs which license or permit the use of the "TRADEMARK-IN-SUIT."  This request does not, therefore, require disclosure of confidential licensing agreements or related documents with Plaintiff's actual licensees.  On that basis, the Court will uphold the request as relevant and orders Plaintiff to produce documents which describe its intellectual property programs which license or permit the use of the "TRADEMARK-IN-SUIT."

**Request Nos. 8, 15:**   Request No. 8 requests all license agreements between Plaintiff and any persons for a license or permission to use the "TRADEMARK-IN-SUIT."  Request No. 15 requests all license agreements for patents or trademarks with any person from 1999 to the present, which relates to or concerns a license or permission to use the "TRADEMARK IN SUIT."  The Court upholds Plaintiff's objection to these requests based on the Court's Orders #405 and #442.  In its Opposition to Defendant's motion to compel, the Plaintiff relied on these orders regarding similar requests for production made by Co-Defendant Norcent in arguing that Defendant has not made a required showing that it actually purchased products from Plaintiff's licensees such that its request for production of confidential license agreements between Plaintiff and other persons is relevant or necessary.  *See DIRECT TV, Inc. v. Trone,* 209 F.R.D. 455, 459 (C.D.Cal. 2002).  Here, as well, Defendants allege that they have purchased products from some of Plaintiff's licensees, but have not produced any evidence to support their allegations that they purchased product from any of Plaintiff's licensees that would satisfy their burden of demonstrating relevancy or need for the license agreements.

**Request Nos. 9-11, 16:**   Request Nos. 9 to 11 request production of all communications, documents and license agreements between Plaintiff and Zhenjiang Jiangkui Group Co. that refer or relate to the "TRADEMARK-IN-SUIT."  Request No. 16 requests documents regarding all royalty payments made to Plaintiff by Zhenjiang Jiangkui Group Co.  In support of these requests, Sungale alleges that Zhenjiang Jiangkui Group Co. was a licensee of Plaintiff at the time it sold allegedly

1  infringing products to Sungale which supports Sungale's affirmative defense of implied license.

2       In response to Sungale's motion, Plaintiff states at page 8 of its Opposition (#499) that it has no
3  record of a trademark license agreement or documents relating to a trademark license agreement with
4  Zhenjiang. Plaintiff attached to its Opposition a declaration by Christopher J. Horgan, its director of
5  intellectual property licensing, who states that Plaintiff has no record of a license confirmation card
6  from Zhenjiang Jiangkui Group Co. In its Reply (#518), page 8, Defendant argues that Plaintiff has not
7  given a clear response or answer whether Plaintiff or its affiliated entities have an existing license or
8  had a prior licensing agreement with Zhenjiang Jiangkui Group Co. The Court agrees with Defendant
9  in this regard and orders that Plaintiff clearly state whether it has or does not have responsive
10 documents relating to Zhenjiang Jiangkui Group Co. If Plaintiff does not have such documents or
11 information, it should clearly so state. Should such documents exist, then consistent with the Court's
12 Orders #405 and #442, the Court will consider Defendant's request for production of confidential or
13 trade secret information and documents regarding Plaintiff's dealings with Zhenjiang Jiangkui Group
14 Co. upon a showing by Defendant that it purchased allegedly infringing products from Zhenjiang
15 Jiangkui Group Co.

16      **Request Nos. 12, 13:**  Request No. 12 requests all documents sufficient to identify the method
17 used by Plaintiff to calculate or derive the royalty rate for the license or permission to use the
18 "TRADEMARK-IN SUIT." Request No. 13 further requests all documents sufficient to show the
19 method of calculating the royalty rate to use the "TRADEMARK-IN-SUIT." Request No. 13 appears to
20 be repetitive of Request No. 12. Defendant argues that these requests seek relevant information
21 regarding calculation of damages in this case. Plaintiff does not argue in its Opposition (#499) that
22 these requests are irrelevant, but rather that they are overbroad. The Court, therefore, orders Plaintiff to
23 produce documents that reasonably show the method used by Plaintiff to calculate or derive the royalty
24 rate for the license or permission to use the "TRADEMARK-IN-SUIT."

25      **Request No. 14:**  Request No. 14 seeks all communications between Plaintiff and
26 DEFENDANTS from 1999 to the present concerning the licence or permission to use the
27 "TRADEMARK-IN-SUIT."  As defined in the Sungale Defendants' requests, "DEFENDANTS"
28 means Sungale Group, Inc., Sungale Electronics (Shenzhien), Ltd. and Amoisonic Electronics, Inc.

1  This request clearly seeks relevant information and Plaintiff is ordered to produce all documents
2  responsive to this Request.
3        **Request No. 17:**   Request No. 17 requests all documents from 1999 to the present sufficient to
4  identify the ROYALTY rate charged by Plaintiff to any licensee to use the "TRADEMARK-IN-SUIT."
5  Discovery of documents and information regarding the royalties charged by Plaintiff to licensees for use
6  of its trademark may be relevant in calculating a reasonable royalty in assessing the damages allegedly
7  sustained by Plaintiff for the infringement of its trademark.  *See Georgia-Pacific Corp. v. United States*
8  *Plywood Corp.,* 318 F.Supp. (S.D.N.Y. 19790); *A & L Laboratories v. Bou-Matic, LLC*, 2004 WL
9  1745865 (D.Minn.).  Plaintiff's objections to this request are simply boilerplate objections.  Subject to
10 the protective order entered in this action, Plaintiff is ordered to produce documents responsive to this
11 request.
12       **Request Nos. 18-20:**   Request No. 18 and 19 requests all correspondence and documents
13 concerning communications between Plaintiff and its investigator National Trademark Investigations
14 concerning or relating to the "TRADEMARK-IN-SUIT."  Request No. 20 requests the identity of
15 representatives or employees of National Trademark Investigations involved in the seizure of the
16 "ACCUSED INSTRUMENTALITY."   Plaintiff has objected to these requests of the basis of the work-
17 product doctrine, as well as on relevance and overbreadth grounds.  The information requested on its
18 face appears relevant.  The issue is whether it is protected from disclosure under the work-product
19 doctrine.
20       The work-product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3), protects from
21 disclosure documents and tangible things prepared by a party or his representative in anticipation of
22 litigation.  *In re Grand Jury Subpoena*, 357 F.3d 900, 906 (9th Cir. 2004), citing *Admiral Ins. Co. v.*
23 *United States District Court*, 881 F.2d 1486, 1494 (9th Cir. 1989).  The work-product doctrine applies
24 to documents created by investigators working for attorneys, provided the documents were prepared in
25 anticipation of litigation.  *In re Grand Jury Subpoena*, *supra,* citing *United States v. Nobles*, 422 U.S.
26 225, 239, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).  Ordinary work product, such as witness statements or
27 photographs are discoverable upon a showing that the party seeking discovery has substantial need of
28 the materials in preparation of the party's case and that the party is unable, without substantial hardship,

1   to obtain the substantial equivalent of the materials by other means.  *See* Wright, Miller & Marcus,
2   *Federal Practice and Procedure*, (2d ed. 1994), § 2024.  In ordering discovery of such materials when
3   the required showing has been made, the court is required to protect against disclosure of the mental
4   impressions, conclusions, or legal theories of an attorney or other representative of a party concerning
5   the litigation.

6   Although Fed. R. Civ. Pro. 26(c) protects from disclosure the mental impressions, conclusions,
7   or legal theories of an attorney or other representative, a party's investigator may be required to reveal
8   all factual information which he has uncovered as a result of his investigation.  *Laxalt v. McClatchy*,
9   116 F.R.D. 438, 442 (D. Nev. 1987)*, citing Eoppolo v. National Railroad Passenger Corp.*, 108 F.R.D.
10  292 (E.D. Pa. 1985).  In obtaining such factual information from an investigator, however, the party
11  seeking the information may not inquire into and the investigator shall not divulge counsel's view of
12  the case, which facts counsel considered significant, or what specific questions were asked of witnesses
13  by the investigator.  Such information falls under the category of mental impressions protected by Rule
14  26(c).  Thus, in *Laxalt* the court held that the investigators were required to answer questions seeking to
15  discover relevant facts regardless of whether the investigators discovered those facts prior to or during
16  their roles as investigators.  Broad-based questions which sought to have the investigator disclose the
17  mental impressions or strategy of the attorney, however, were not proper.  As *Laxalt* states, the party
18  seeking discovery of the specific factual information known by the investigator should carefully tailor
19  his questions at deposition so as to elicit only the specific factual material known to the investigator,
20  without disclosing what facts the attorney who retained the investigator thought were significant or
21  insignificant in the case.

22  Application of the work-product rule is addressed to the sound discretion of the court.  *Diamond*
23  *State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 699 (D.Nev. 1994).  Correspondence and
24  documents relating to communications between Plaintiff and its investigator, National Trademark
25  Investigations, regarding the seizure of documents from the Defendant would appear on their face to be
26  information potentially protected from disclosure by the work-product doctrine.  Plaintiff has attached
27  to its opposition a "privilege log" in which it asserts the work-product doctrine as to various
28  communications between Plaintiff's counsel and representatives of National Trademark Investigations

1  which again suggests that the subject documents are protected work product.   The privilege log,

2  however, provides no dates for these communications.  *Diamond State* further states:

> The party asserting the work-product rule has the burden of establishing, for each document, the rule's application. Fed.R.Civ.P. 45(d)(2); *Conoco Inc. v. United States Dept. of Justice,* 687 F.2d 724, 728 (3rd Cir.1982) (FOIA case).   This burden is met by submitting detailed affidavits sufficient to show that precise facts exist to support the immunity claim. *Harvey's Wagon Wheel, Inc. v. N.L.R.B.,* 550 F.2d 1139, 1141 (9th Cir.1976) (FOIA case); *Nutmeg Insurance Co. v. Atwell, Vogel & Sterling, a Division of Equifax Services, Inc.,* 120 F.R.D. 504 (W.D.La.1988).   The asserting party will usually also provide a privilege log describing the documents it claims to be protected.   This log alone, however, is often inadequate to conduct the necessary analysis.   See *Murray Sheet Metal Company, Inc.,* 967 F.2d at 985 (record consisting mainly of privilege log inadequate).

Although Plaintiff has not made an adequate showing in its Opposition to support the application of the work-product doctrine, given the probability that the documents are protected by the work-product doctrine, the Court will exercise its discretion to hold that Plaintiff has not, as yet, waived its work-product privilege.  Plaintiff is, however, required to file with the Court and serve on Defendants' counsel within 10 days of this order, an affidavit(s) sufficient to show that the documents are protected work product.  Defendants shall then be required to show that it has a substantial need for "non-opinion," work-product materials.

**Request No. 21:**   Request No. 21 requests all documents sufficient to identify an inventory of items and documents seized from Defendant's place of business.  The Court will deal with this request by separate order governing the providing of indexes, inventories or other means of identifying documents produced by the parties.

**B.     Interrogatories.**

**Interrogatory No. 1:**  Interrogatory No. 1 asks Plaintiff to identify all intellectual property programs which license or permit use of the TRADEMARK-IN-SUIT.   The Court orders Plaintiff to answer this interrogatory consistent with the Court's order regarding Request No. 7.

**Interrogatory Nos. 2, 9:**   Interrogatory No. 2 asks Plaintiff to identify all LICENSE AGREEMENTS between Plaintiff and any persons which refer or relate to the "TRADEMARK-IN-SUIT."   Interrogatory No. 9 asks Plaintiff to identify all license agreements for patents or trademarks from 1999 to the present which include a license or permission to use the "TRADEMARK-IN-SUIT."

1  These interrogatories appear to overlap.  These interrogatories are arguably overbroad to the extent they
2  seek information about licenses with persons with whom Defendants had no relation as an alleged
3  implied licensee.  However, the interrogatories only seek the identity of licensees, which potentially
4  could lead to the discovery of relevant or admissible evidence.  Plaintiff has not demonstrated that
5  production of this information is unduly burdensome.  In addition, this interrogatory may be relevant to
6  establishing the reasonable royalty rate based on royalties charged by Plaintiff to other persons for use
7  of its "TRADEMARK-IN-SUIT."  Plaintiff is ordered to answer this interrogatory.  Interrogatory No. 9
8  asks Plaintiff to identify all license agreements for patents or trademarks from 1999 to the present
9  which include a license or permission to use the "TRADEMARK-IN-SUIT."

10  **Interrogatory Nos. 3-5:**   Interrogatory Nos. 3-5 request that Plaintiff identify all
11  communications, documents and licensing agreements between Plaintiff and Zhenjiang Jiangkui Group
12  Co.  In its Opposition to Defendant's motion, Plaintiff states that it has no record of a licensing
13  agreement with Zhenjiang Jiangkui Group Co.  Plaintiff is ordered to supplement and clarify its
14  responses and answers to interrogatories by stating whether or not it has any records of
15  communications, documents or licensing agreements with Zhenjiang Jiangkui Group Co.   If such
16  information exists, the Court will consider requiring Plaintiff to respond further to these interrogatories
17  upon a showing by Defendant that it purchased allegedly infringing products from Zhenjiang Jiangkui
18  Group Co.

19  **Interrogatory Nos. 6, 7:**   Interrogatory Nos. 6 and 7 ask Plaintiff to describe the method and
20  identify all documents sufficient to show the method used by it to calculate or derive the royalty rate for
21  the license or permission to use the "TRADEMARK-IN-SUIT."  Plaintiff is ordered to answer these
22  interrogatories.

23  **Interrogatory No. 8:**   Interrogatory No. 8 asks Plaintiff to identify all documents between
24  Plaintiff and Defendant from 1999 to the present concerning the license or permission to use the
25  "TRADEMARK-IN-SUIT."  Plaintiff is ordered to answer this interrogatory, or in lieu thereof, produce
26  all relevant documents in response Defendant's Request No. 14.

27  **IT IS HEREBY ORDERED** that Defendant Sungale Group's Motion to Compel Discovery
28  From Plaintiff Koninklijke Philips Electronics (#470) is **granted** in accordance with the foregoing

1  provisions of this Order.

2  **IT IS FURTHER ORDERED** that Plaintiff is to provide proper responses to requests for
3  production of documents within **14 days** of the date of this order.

4  **IT IS FURTHER ORDERED** that Plaintiff is to serve responsive supplemental answers to
5  interrogatories within **10 days** of the date of this order.

6  **IT IS FURTHER ORDERED** that no costs or attorney's fees will be awarded on this Motion.

7  DATED this 16th day of March, 2007.

_____
GEORGE FOLEY, JR.
U.S. MAGISTRATE JUDGE