1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

8

**DISTRICT OF NEVADA**

9

10  KONINKLIJKE PHILIPS ELECTRONICS )
     N.V., a Netherlands corporation, )
11                                    )
                          Plaintiff,  )      Case No.  2:05-cv-01532-RLH-GWF
12                                    )
     vs.                              )      **FINDINGS, RECOMMENDATION**
13                                    )      **AND ORDER TO SHOW CAUSE WHY**
     KXD TECHNOLOGY, INC., et al.,     )      **THE KXD AND SUNGALE**
14                                    )      **DEFENDANTS SHOULD NOT BE**
                          Defendants. )      **FOUND IN CONTEMPT**
15  _____ )

16          This matter is before the Court on Philips' Emergency Motion For: 1. Order to Show Cause

17  Why KXD Defendants Should Not Be Held in Civil Contempt; 2. Order for Discovery Sanctions (#658)

18  (hereinafter "Contempt/Sanctions Motion"), filed on June 21, 2007; KXD Defendants' Opposition to

19  Philips' Emergency Motion for: 1. Order to Show Cause Why Sungale Defendants Should Not be Held

20  in Civil Contempt; and 2. Order for Discovery Sanctions (#674), filed July 23, 2007; KXD Defendants'

21  Opposition to Philips' Emergency Motion for: 1. Order to Show Cause Why Sungale Defendants

22  Should Not be Held in Civil Contempt; and 2. Order for Discovery Sanctions (#685), filed August 4,

23  2007; and Philips' Reply to KXD Defendants' Opposition to Philips' Emergency Motion for: 1. Order

24  to Show Cause Why KXD Defendants Should Not be Held in Civil Contempt; and 2. Order for

25  Discovery Sanctions (#694), filed August 17, 2007.

26          Also before the Court is Philips' Emergency Motion For: 1. Order to Show Cause Why Sungale

27  Defendants Should Not Be Held in Civil Contempt; 2. Order for Discovery Sanctions (#662), filed on

28  June 29, 2007; Sungale Defendants' Opposition to Philips' Emergency Motion for: 1. Order to Show

1   Cause Why Sungale Defendants Should Not be Held in Civil Contempt; and 2. Order for Discovery

2   Sanctions (#669), filed July 17, 2007; Philips' Reply to Sungale Defendants' Opposition to Philips'

3   Emergency Motion for: 1. Order to Show Cause Why Sungale Defendants Should Not be Held in Civil

4   Contempt; and 2. Order for Discovery Sanctions (#672), filed July 23, 2007; Sungale Defendants'

5   Opposition to Philips' Emergency Motion for: 1. Order to Show Cause Why Sungale Defendants

6   Should Not be Held in Civil Contempt; and 2. Order for Discovery Sanctions (#684), filed August 3,

7   2007; and Philips' Reply to Sungale Defendants' Opposition to Philips' Emergency Motion for: 1.

8   Order to Show Cause Why Sungale Defendants Should Not be Held in Civil Contempt; and 2. Order

9   for Discovery Sanctions (#693), filed August 17, 2007.

10        Defendant KXD Technology Inc. filed a Notice of Filing of Bankruptcy Petition Under Chapter

11   11 of Title 11 of the U.S. Code and of Automatic Stay #692 on August 17, 2007.  Accordingly, the

12   Court's Findings and Recommendations, and Order to Show Cause Why Defendants Should Not Be

13   Found in Contempt does not apply to Defendant KXD Technology, Inc., subject to a further order

14   lifting the automatic bankruptcy stay as to it.

15                                    **INTRODUCTION**

16        Plaintiff seeks the imposition of severe sanctions against the KXD and Sungale Defendants and

17   an order to show cause why they should not be held in civil contempt based on their alleged willful

18   failure to produce documents as ordered by the Court and the failure of their Rule 30(b)(6) deponents

19   and officers to appear for their noticed depositions.  Plaintiff further alleges that Defendants have

20   engaged in a pattern of willful violation of court orders and rules that justify the imposition of severe

21   sanctions.  In opposing Plaintiff's Contempt/Sanctions Motions, the KXD and Sungale Defendants

22   argue that they have complied with the Court's orders by producing documents in their possession,

23   custody and control, but are unable to produce electronic documents previously contained in their

24   computer servers due to the damage to the servers that occurred during the January 2006 seizures of

25   their records by the Marshal or Plaintiff's agents.  Defendants also argue that Plaintiff already possesses

26   many of documents by virtue of the seizures.  Thus, Defendants argue that it would be unfair to

27   sanction them for not producing documents that they are incapable of producing.  In regard to Plaintiff's

28   argument that Defendants have willfully failed to produce their Rule 30(b)(6) deponents and officers for

2

their depositions, Defendants argue that it was impossible for them to produce their Chinese resident

officers for depositions in the United States and that Plaintiff failed to confer in good faith in

scheduling the depositions prior to the discovery cutoff date.  Defendants also contend that they were

prohibited by the Court from addressing the issue whether the depositions should be taken in the United

States.

## FACTUAL BACKGROUND

### 1.   Defendants' Alleged Failure to Produce Documents In Compliance With Court Orders.

At the outset of this litigation in January 2006, the District Judge entered a Temporary

Restraining Order and Seizure Order #39, pursuant to which the U.S. Marshal, with the assistance of

Plaintiff, seized and impounded Defendants' allegedly infringing products and business records.

Plaintiff was made custodian of the seized products and business records.  According to Plaintiff,

approximately two boxes of paper documents were seized from the KXD and Sungale Defendants,

respectively.  The paper documents were copied and then returned to Defendants.  The

Marshal/Plaintiff also seized Defendants' voluminous electronic records by making a computer

image/copy of records on Defendants' computer servers.  The January 2006 Temporary Restraining

Order and Seizure Order #39 and the Court's subsequent March 15, 2006 Order for  Preliminary

Injunction #252 prohibited Defendants from destroying or making unavailable their electronic files and

business records.

On August 24, 2006, eight months after the seizures, Plaintiff served interrogatories and

requests for production of documents on the KXD and Sungale Defendants.  As set forth in this Court's

orders #568 and #581, Defendants responded to Plaintiff's discovery requests in October 2006 by

asserting numerous boilerplate objections.  Defendants did not produce any documents in response to

the requests for production.  Defendants' responses to Plaintiff's interrogatories were not signed by the

Defendants' representatives.  Defendants did not provide any privilege logs or affidavits with their

discovery responses, or thereafter, to support their attorney-client privilege or work-product doctrine

objections.  After an exchange of correspondence, counsel for the parties conducted a meet and confer

conference on November 15, 2006.  As stated in the Court's subsequent orders to compel, this

1   discovery conference fell short of a truly meaningful and good faith dispute resolution conference

2   required by Fed.R.Civ.Pro. 37(a)(2)(B). *See* Orders #568 and #581, pp. 3-4. Following this

3   conference, however, Defendants still failed to produce any responsive documents. Nor did they

4   produce any documents as of the January 12, 2007 hearing on Plaintiff's motions to compel.

5   Because Plaintiff's discovery requests, for the most part, sought relevant information and

6   documents, the Court granted Plaintiff's motion to compel responses to most of the requests sought in

7   Plaintiff's motions. The Court also held that Defendants waived their privilege objections by failing to

8   provide any privilege logs or affidavits to support of their privilege claims. The Court also held that

9   Plaintiff was entitled to an award of attorney's fees and costs and subsequently awarded Plaintiff

10  attorneys fees and costs in the amount of $5,000 against the KXD and Sungale Defendants,

11  respectively. *Orders* #568 and #581, p. 11, *Order* #652, filed June 12, 2007.

12  As part of its motions to compel, Plaintiff requested that the Court order Defendants to produce

13  documents that had been previously copied during the January 2006 seizures. On March 9, 2007,

14  Plaintiff filed a motion for clarification #580 requesting that the Court include this requirement as part

15  of the orders compelling production.[1]  In their March 16, 2007 response #590, the KXD and Sungale

16  Defendants argued that they would have difficulty producing previously seized paper documents

17  because of the disorganized state in which they were returned to Defendants. Defendants also asserted

18  that they would have difficulty producing electronic documents because their computer servers and hard

19  drives were damaged by Plaintiff's agents during the January 2006 seizures and electronic files were

20  lost or destroyed. To support this latter assertion, the Defendants submitted a declaration by the KXD

21  Defendants' general counsel, Jun Liu, which stated:

22
23  > *One year after the seizure, KXD Technology is still trying to restore its server.* As of the date of this declaration, KXD has spent approximately $1,800.00 trying to restore its server due to the negligence of Philips' agents. The extent and identity of all of the lost files is still not known.
24

25  _____

26  [1]Plaintiff's motion for clarification #580 was filed shortly before the Court issued its order #581 regarding the KXD Defendants. The order to compel regarding the KXD Defendants was substantially identical to the order #568 regarding the Sungale Defendants. The Court's order #595, filed on March 20, 2007, clarifying the orders to compel, applied to both the KXD and Sungale Defendants. *Order* #595, p.1 n. 1; p. 8.

27
28

4

1    (Emphasis added.)

2  *See Response* #590, *Declaration of Jun Liu*, p. 2. ¶ 5.

3        Defendants submitted a similar declaration by the Sungale Defendant's manager, Qin Zhang.

4  Mr. Zhang stated that the Sungale Defendant's server was also damaged during the January 2006

5  seizure and that many files were lost and could not be recovered.  *Response* #590, *Declaration of* Qin

6  Zhang, p. 2, ¶ 3.

7        The Court granted Plaintiff's motion for clarification and ordered that Defendants produce

8  documents responsive to the requests even if the same documents had previously been seized by the

9  Marshal/Plaintiff.  The Court's reasons for this clarification are set forth in Order #595, filed on March

10  20, 2007.  As the Court stated therein:

11            The fact that the discovering party has already obtained requested records
             does not *per se* eliminate the responding party's obligation to produce
12            those same records in response to a request for production.  As the court
             states in *Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1117 (9th
13            Cir. 2004), "[a]n important purpose of discovery is to reveal what
             evidence the opposing party has, thereby helping determine which facts
14            are undisputed– perhaps paving the way for a summary judgment
             motion–and what facts must be resolved at trial."

15

16  *Order* #595, p. 5.

17        The Court also based its decision on the fact that the seizure order was granted for the purpose

18  of preserving evidence.  The seizure order was not intended to shift to Plaintiff the Defendants' burden

19  of producing documents in response to legitimate requests for production.  It was represented to the

20  Court that the seized electronic files were voluminous and not organized in any efficient manner.  The

21  Court therefore concluded that it was proper to require Defendants to produce documents even though

22  the same documents may be in the possession of Plaintiff by virtue of the seizures.  *Order* #595, pp. 5-

23  6.

24        The Court also rejected Defendants' assertion they were unable to produce previously seized

25  paper documents because Defendants had substantial time in which to reorganize and produce the paper

26  records.  *Order #595,* p. 6.  The Court was also not persuaded that Defendants' computer servers were

27  damaged during the January 2006 seizures because Defendants did not provide affidavits or

28  documentation from any computer technicians to support their assertions.  The Court cautioned

1    Defendants that it had the power to appoint a neutral computer forensic expert to determine whether the

2    servers had been damaged and whether any relevant electronic data has been lost or destroyed.  *Order*

3    #595, p. 7.  The Court also cautioned Defendants that it might impose severe sanctions, including

4    striking Defendants' answers, if it determined that they had falsely claimed that their computer records

5    were destroyed or lost as a result of the seizures.  The Court also noted that Plaintiff offered to provide

6    Defendants with computer disc copies of the seized electronic documents so that Defendants could

7    produce electronic documents that might have been destroyed during the seizure.  *See Order* #595, pp.

8    6-8.  Notwithstanding the alleged damage to their servers, Defendants stated in their response #590  that

9    they had produced or would be producing documents regardless of whether the same documents were

10   previously seized.  The Court stated that it would take these statements at face value and so long as

11   Defendants produced the documents, no further action by the Court would be necessary.  *Order* #595,

12   p. 8.

13          In their August 2007 Responses, #684 and #685, to Plaintiff's Contempt/Sanctions Motions, the

14   Sungale and KXD Defendants again argue that their electronic records were damaged or destroyed

15   during the January 2006 seizures.  The KXD Defendants now rely on the declaration of their vice-

16   president, Defendant Jingyi Luo (James Luo).  *See KXD Defendants' Response to Contempt/Sanctions*

17   *Motion* #685, *Declaration of Jingyi Luo.*  According to Defendant Luo*, during the January 2006*

18   seizure, Philips' representatives shut down KXD Technology's computer server.  When the server was

19   restarted, Defendant Luo reportedly discovered that many of the files previously stored on the server

20   were missing.  He also asserts that the server did not function properly in that employees could not

21   access much of the information contained on the server.  Defendant Luo states that KXD Technology

22   attempted to fix the server several times, but could not.  *Id.,* ¶¶ 7-10.  Defendant Luo states that after a

23   new server was installed, retrievable documents from the old server were transferred to the new server

24   and the old server was discarded.  *Id.,* ¶ 10.  No information is provided as to when these events

25   occurred.  Nor do Defendants provide the Court with any information regarding the extent of the

26   damage to the server or to what extent documents from the old server were transferred to the new

27   server.

28          Defendant Luo attached to his declaration a copy of "a payment history report showing the

6

payments made to outside companies try (sic) to repair KXD Technology's server, to purchase a new server, and install the new computer system." *Id.,* ¶ 9, Exhibit "A".  These documents appear to be records of payments that Defendant Astar Electronics made to two companies, Axon Computer Corp. and Alice Computerworks, between April and December 2006.  Defendants have not produced any invoices or work orders from either company to verify what the payments were for.  Defendants have still not provided any declaration from any computer technician that verifies the alleged damage to the server.  Because Defendant Luo states that the KXD Defendants discarded the allegedly damaged server at some unstated date, it is now impossible to independently verify whether Defendants' server was, in fact, damaged at any time.

The Sungale Defendants' general manager, Qin Zhang, states that after the seizure, Defendant could not access any files previously stored on its server and that the server simply stopped functioning. Mr. Zhang now states that Defendants had a technical expert from China, Joey Zhong, examine the server, and he reportedly advised Mr. Zhang that the server could not be repaired and a new hard drive had to be purchased.  According to Mr. Zhang, Defendant purchased a new hard drive on March 25, 2006 and once the new server was purchased, the old damaged server was discarded.  *Declaration of Qin Zhang* #684, ¶¶ 4, 6-8.  Mr. Zhang has attached to his recent declaration a photocopy of a one-page document in the Chinese language which he represents is the receipt for the purchase of the new hard drive.  Because this document has not been translated, the Court cannot determine whether it is what Mr. Zhang purports it to be.  Plaintiff, which presumably has the ability to translate Chinese documents, however, has not disputed that the document is a receipt for the purchase of a computer hard drive.

Plaintiff has submitted sworn declarations from the computer technicians who copied Defendants' computer server hard drives during the seizures.  *See Declaration of Ankoma Moore In Support of Plaintiff Reply* #694, dated August 17, 2007 and *Declaration of Chris Petrescu* #589, dated March 16, 2007.  Both technicians state under oath that they did not remove, seize or retain the original hard drives and that the original hard drives were operating and were not damaged when they left Defendants' premises.  Additionally, Plaintiff states that it offered to provide Defendants with a computer disc copy of the seized electronic documents so that Defendants could comply with the Court's discovery orders if, in fact, their servers had been damaged during the seizures.

7

1    _____Philips states in its Motion #658, pp. 7-8, that since the entry of the Court's order #581, the

2    KXD Defendants have produced a total of 1461 pages of documents and have failed to comply with the

3    Court's orders #581 and #595 by failing to produce substantial portions of the documents requested by

4    Plaintiff.  In its Motion for Contempt/Sanctions #662 against the Sungale Defendants, Plaintiff argues

5    that the Sungale Defendants produced a total of 234 pages of documents as of the date Plaintiff filed its

6    motion.  *See Contempt/Sanctions Motion* #662,  p. 6.  As to each set of Defendants, Plaintiff argues that

7    they have failed to produce complete (1) financial records, i.e., tax returns and financial statements, for

8    the time periods that the Court ordered produced; (2) attorney-client and attorney work-product

9    documents as to which the Court held that Defendants waived their privilege objections, (3) advertising

10   documents, (4) inventory documents, (5)  seized documents (i.e., relevant documents that the Court

11   ordered Defendants to produce regardless of whether they were previously seized); and (5)

12   email/correspondence.  *See Plaintiff's Contempt/Sanctions Motion* #658, pp. 8-11 and *Plaintiff's*

13   *Contempt/Sanctions Motion* #662, pp. 6-8.  In support of its arguments, Plaintiff cites the relatively

14   small number of documents actually produced by the Defendants, the incompleteness of the documents

15   produced and the inconsistency between what Defendants have produced when compared to the records

16   that Plaintiff has found in the seized records.  *Id.*[2]

17       In their Responses #684 and #685, the Sungale and KXD Defendants' counsel recite the dates

18   on which Defendants produced documents or further responded to Plaintiff's interrogatories.

19   Defendants argue that they have produced all documents in their possession, custody and control which

20   are responsive to the requests for production which the Court ordered them to respond to.  Because of

21   the alleged damage to their computer hard drives during the seizures, Defendants contend that they have

22   been unable to produce all relevant documents that may have been seized in January 2006 and that

23   explains why documents contained in the seized records have not been included in their responses to

24   requests for production.

25       In its reply briefs, Plaintiff disputes Defendants' allegations regarding the alleged damage to

26

27       [2]In comparison to the volume of Defendants' document production, Plaintiff states that over
     800,000 pages of electronic documents were seized from the KXD Defendants and nearly 40,000 pages
28   of electronic documents were seized from the Sungale Defendants.

their computer servers and contends that if Defendants have failed to produce relevant records contained in the seized documents, there is no telling what responsive documents they have also failed to produce that were not obtained during the January 2006 seizures.

## 2.   **Defendants' Alleged Failure to Appear for Depositions.**

According to the Declaration of Plaintiff's counsel Jan Jensen, Plaintiff's counsel attempted to meet and confer with Defendants' counsel in December 2006 through February 2007 to schedule the depositions of Defendants' officers and Rule 30(b)(6) deponents, but Defendants' counsel refused to provide dates. *Jensen Declaration* #658, ¶¶ 15, 16.  Defendants' counsel, Gabriel Hedrick, contends that Plaintiff's counsel first sent him an email on February 21, 2007 listing Defendants' officers or witnesses that Plaintiff wished to depose. *Hedrick Declaration* #685, ¶¶ 33-34.  Plaintiff's counsel's email, however, recited that "beginning in December 2006 and January 2007, we requested dates for the following depositions ..."  The email further requested that Defendants' counsel provide deposition dates by February 23, 2007, otherwise Plaintiff would serve notices for the depositions.  *Motion* #658, *Exhibit 6.*  The February 21, 2007 email did not specify a location for the depositions.

The Court conducted a status conference on March 2, 2007 to discuss a further extension of the discovery deadline.  During that conference, Plaintiff's counsel raised several issues concerning written discovery and depositions, including the location of the depositions of Defendants' Rule 30(b)(6) deponents and officers.  *Transcript of March 2, 2007 Hearing on Discovery Issues* #588, pp. 13-14; 28-29.  Plaintiff's counsel argued that Defendants' 30(b)(6) deponents and officers should be required to appear in the United States for their depositions.  *Id.*, pp. 28-29; 30-31.  The Court declined to decide issues regarding depositions during the hearing and, instead, directed the parties to file written status reports regarding depositions by March 12, 2007.  *Id.,* pp. pp. 30 -31.   The Court stated:

> THE COURT:  So here's what I want to do, is I want some idea, beyond what's just being presented to me orally here, of who the proposed deponents are for each of the parties, where the parties anticipate taking those depositions or where they would like those depositions or request those depositions be conducted, and what the other – you know, the party producing the deponent or the witness of the party, what objections they have or what they're willing to do in terms of making them available, when and where they will be made available.

*Transcript of March 2, 2007 Hearing on Discovery Issues* #588, p. 31.

Following the March 2nd conference, Defendants' counsel sent Plaintiff's counsel an email on March 7, 2007 offering to make certain KXD and Sungale witnesses available for depositions in China between April 9-13, 2007, and to make other KXD and Sungale witnesses available for deposition in Los Angeles, California between April 2-5, 2007. *Opposition* #685, *Exhibit "P".*  In their March 12, 2007 status report #583 to the Court, the KXD and Sungale Defendants also listed the officers and witnesses they were willing to make available for deposition in China or the United States on the foregoing dates.  The KXD and Sungale Defendants' status report did not otherwise address the issue of whether the depositions of their officers should be taken in China or the United States.

Plaintiff's March 12, 2007 status report #584 briefed at length its argument that the depositions of Defendants' Rule 30(b)(6) deponents and officers should be taken in the United States. *Plaintiff's Status Report* #584, pp. 8-13.  Among the reasons cited by Plaintiff were its concerns that Defendants had refused to comply with previous court orders, and the court would be unable to intervene during the depositions to resolve disputes that would likely arise if the depositions took place in China.  Plaintiff also stated that the court ordered audit of Defendants should proceed prior to the depositions. *Id.,* pp. 12-13.  On March 19, 2007, Plaintiff's counsel sent a letter responding to Defendants' status report regarding the available dates for the depositions of the KXD and Sungale Defendants.  Plaintiff's counsel stated that Plaintiff desired to conduct the audit of Defendants during the week selected by Defendants for the depositions in China and that the depositions should commence immediately thereafter. *Motion* #658, *Exhibit "7".*

On March 27, 2007, the Court filed its Order #599 regarding the location of Defendants' depositions and the number, length and sequencing of depositions.  The Court noted that Defendants' status reports did not address the legal issues regarding the location of depositions.  Nor did Defendants file or request leave to file any supplemental briefs in response to the arguments in Plaintiff's Status Report. *Order* #599, p. 9.  Based on the authority cited by the Plaintiff and good cause appearing therefore, the Court ordered that Defendants produce their officers and Rule 30(b)(6) deponents in Los Angeles, California, unless Defendants demonstrated good reason why the depositions should be taken in Las Vegas, Nevada. *Id.,* pp. 9-10.  The Court scheduled a further status conference for April 12, 2007 and directed the parties to file status reports by April 10, 2007.

1    In their April 10, 2007 status report, Defendants stated that they "intend to move the court to

2    reconsider or modify its order on the location and order of depositions." *Defendants' Status Report*

3    *#614*, p. 10.  Defendants stated that they had not been given adequate opportunity to brief the issue and

4    did not understand the Court's statements during the March 2, 2007 hearing as indicating that it would

5    enter an order regarding the location of depositions based on the status reports.  *Id.,* pp. 10-11.

6         At the beginning of the April 12, 2007 status conference, the Court stated:

7              I do note that in the order that I previously did regarding the conduct of
               depositions of foreign witnesses and parties that – I think it's the KXD
8              and Sungale defendants want to further litigate that matter.  I – based on
               my review when – and I will acknowledge that the issue was addressed in
9              depth only by the plaintiff.  However, the case law, as I see it, seems to be
               – to support that position that foreign officers and agents of the
10             defendants should probably be deposed in the United States.

11             I guess at this point if you want to challenge that order you may do so, but
               I, you know, absent something substantially convincing, otherwise I don't
12             see where that order would be changed.

13   *See Transcript of April 12, 2007 Status Hearing* #619, pp. 4-5.

14        During the hearing, counsel for the KXD and Sungale Defendants advised the Court of the

15   difficulties that the Defendants' officers would have in obtaining visas to attend their depositions in the

16   United States.  *See Transcript of April 12, 2007 Status Hearing* #619, pp. 11-12.  Plaintiff's counsel

17   objected to Defendants' counsel addressing this issue because he was seeking a rehearing of the Court's

18   order without having first filed a motion.  The Court allowed Defendants' counsel to make his

19   statement.  *Id.,* p. 12.   The Court then stated:

20             I think at this point where I'm gonna leave it is certainly the order I've
               issued remains in effect.  I'm not modifying it at this time.  I'm not going
21             to try in this hearing to deal with other issues that are out there, whether
               its regarding depositions, whether discovery responses have been made in
22             compliance with the court orders.  You can read those orders, you can act
               accordingly or not act accordingly, and file your motions if you need to
23             and the Court will just have to deal with them.

24             I'll make this clear.  This Court's not inclined to change the discovery
               schedule order in this case, and so I'm gonna leave it at that.  And we'll
25             just go from there.

26   *Id.*, p. 14.

27        The Court further stated:

28   . . .

1

2

3

> As I said earlier, I've said previously, I think the parties could resolve some of these issues by good faith and genuine efforts to resolve issues regarding depositions, scheduling depositions, content of depositions, where the depositions are gonna be located, but if you can't do that you just have to file motions.  So I'll leave it at that.

4   *Id.*, p. 15.

5        The April 12, 2007 Minutes of Proceedings #616 stated that the Court ordered that the parties

6   meet and confer regarding the scheduling of depositions and discovery issues.

7        On April 19, 2007, Plaintiff's counsel sent Defendants' counsel a letter in which she again

8   demanded that Defendants provide deposition dates for their officers and Rule 30(b)(6) deponents.

9   Plaintiff's counsel erroneously contended that the Court stated that it would not modify the March 27,

10  2007 Order.  *Motion* #685*, Exhibit "9".*[3]  Defendants' counsel responded to Plaintiff's counsel's letter

11  on April 20, 2007 by reiterating that Defendants were unable to make their Chinese resident witnesses

12  available for deposition in the United States.  *Opposition* #685*, Exhibit "S".*   Defendants offered to

13  make these witnesses available for deposition in Hong Kong if Plaintiff's counsel had concerns about

14  deposing the witnesses in Shenzhen, China.  Plaintiff's counsel did not respond to Defendants'

15  counsel's April 20, 2007 email.  Instead, on May 22, 2007, Plaintiff served notices of deposition to

16  depose Defendants' officers and Rule 30(b)(6) deponents, including those that Defendants' counsel

17  stated could not be produced in the United States.  The depositions were scheduled for June 5-8, 2007.

18  *See Plaintiff's Motion* #658*, Exhibit "10".*

19        On May 29, 2007 the Court conducted a hearing on Co-Defendants Amoi Electronics, et.al.'s

20  Emergency Motion for Protective Order #637 regarding the depositions of their Rule 30(b)(6)

21  deponents.  During that hearing it became evident that the dispute between Plaintiff and the Amoi

22  Defendants could be resolved if the Court granted a 30-day extension of the discovery deadline.

23  Because the extension would also impact the Sungale and KXD Defendants whose counsel was not

24  present at the hearing, the Court scheduled a further hearing on June 1, 2007.  On May 30, 2007, the

25  KXD and Sungale Defendants' counsel sent a letter to Plaintiff's counsel stating that Plaintiff had

26

27        _____

28        [3]As the April 12th hearing transcript makes clear, the Court declined to modify its order during the hearing, but did not rule out modification if a motion was filed.

12

1   unilaterally noticed Defendants' depositions without meeting and conferring and that none of the

2   witnesses, including those located in the United States, would be available for depositions on dates and

3   at the locations noticed.  Defendants' counsel stated that he would be filing objections to the

4   depositions shortly and reiterated his previous statements regarding the inability of the Chinese resident

5   witnesses to appear for depositions in the United States.  *Opposition* #685, *Exhibit "T".*

6           At the follow-up hearing on June 1, 2007, the Sungale and KXD Defendants' counsel stated his

7   objection to the extension of the discovery cut-off date.  Defendants' counsel further stated:

8               We also are planning on filing motions for protective orders as to the
                Chinese witnesses, based on the same representations that I made to the
9               Court in the last status conference that it's – that they just can't be made
                available in the United States because of Visa issues, so – and those will
10              be set forth in detail in the motions for protective orders, but – but, again
                we're in a predicament because Philips has sat on these depositions for
11              awhile, despite the fact that we've offered dates for the depositions, for
                the – as far as almost two, three months ago.
12

13  *Transcript of June 1, 2007 Status Conference* #647, p. 6.

14          The Court reminded Defendants' counsel that prior to entering its March 27, 2007 order #599,

15  the Court had asked the parties to address the issue where the depositions should take place in their

16  status reports.  The Court further noted:

17              But you didn't set forth there and you haven't since that time, on any
                occasion, set forth legal authority or given the Court documented
18              affidavits, supporting information, as to why these depositions cannot or
                should not take place in the United States.
19
                And I say that for the simple reason that, you know, if you had provided,
20              or your clients had provided such information back a few months ago, it's
                possible the Court would've viewed that matter otherwise.  But you
21              didn't do so and you haven't done it since that time.  So that's where we
                stand today on that issue.
22
                Now where that ends up in terms of further motions that may be filed,
23              we'll deal with those when we get to them.

24  *Transcript of June 1, 2007 Status Conference* #647, pp. 15-16.

25          On June 1, 2007, the Court entered its *Order* #645 which extended the fact discovery cutoff date

26  to July 18, 2007.  The Court's order further stated that it would consider any further order or orders

27  governing the number of depositions, places of deposition, and sequence of depositions pursuant to

28  further briefing by the parties.  This latter statement was made in contemplation that the Defendants

13

1   would be filing motions for protective orders regarding the depositions.

2           On June 3, 2007, Plaintiff's counsel sent a letter to Defendants' counsel advising that the

3   depositions of the KXD and Sungale witnesses would go forward as noticed and insisting that

4   Defendants comply with the Court's order to produce the witnesses in Los Angeles for their

5   depositions. *Motion* #658, *Exhibit "11"; Opposition* #685, *Exhibit "U".*   On June 4, 2007,

6   Defendants' counsel responded to Plaintiff's counsel's letter by reiterating the impossibility of

7   producing Defendants' Chinese witnesses for deposition in the United States. *Opposition* #685, *Exhibit*

8   *"V".*  Defendants' counsel also stated that neither the KXD nor Sungale witnesses were available for

9   depositions on the dates that Plaintiff had selected.  Defendants' counsel again invited Plaintiff's

10  counsel to engage in discussions regarding the scheduling of the depositions. *Id.*  On June 4, 2007,

11  Defendants also served written objections to the notices of deposition, including that Plaintiff had failed

12  to provide sufficient notice for the depositions, had taken no steps to coordinate the scheduling of

13  depositions and that the witnesses were unavailable at the location and on the dates noticed for the

14  depositions. *Motion* #658, *Exhibit "12".*

15          Plaintiff proceeded with the deposition of Shenzhen Kaixinda Electronics Co., Ltd pursuant to

16  Fed.R.Civ.P. 30(b)(6) on June 5, 2007 and obtained a Court Reporter's Certificate Re Nonappearance

17  of Deponent. *Motion* #658, *Exhibit "13".*  It appears, however, that Plaintiff renoticed the depositions

18  of other KXD and Sungale witnesses for mid-July, 2007.  Other than the deposition of Shenzhen

19  Kaixinda Electronics Co., Ltd pursuant to Fed.R.Civ.P. 30(b)(6),  Plaintiff has not provided the Court

20  with evidence that it proceeded with the depositions of the KXD and Sungale witnesses on the dates

21  they were noticed and made a record of the deponents' failure to appear.

22          On June 21and 29, 2007, Plaintiff filed its Emergency Contempt/Sanctions Motions #658 and

23  #662.  The Court set a hearing on these motions for July 24, 2007.  Because Defendants did not file

24  timely responses to the Contempt/Sanctions Motions, Plaintiff filed a notice of non-opposition #668 on

25  July 11, 2007.  The Sungale Defendants filed an untimely response #669 to Plaintiff's

26  Contempt/Sanctions Motion on July 17, 2007, one day before the expiration of the extended fact

27  discovery cut-off date, and requested additional time to file a more complete response to Plaintiff's

28  motion #662.  The KXD Defendants did not file a response to Plaintiff's Contempt/Sanctions Motion

14

1  #658 prior to the July 24, 2007 hearing.  At the July 24, 2007 hearing, the Court granted the KXD and

2  Sungale Defendants' request to file more complete responses to Plaintiff's Contempt/Sanctions

3  Motions in order that a complete record be presented before the Court decided the motions.

## DISCUSSION

5  Fed.R.Civ.Pro. 37(b)(2) provides that if a party fails to obey an order to provide or permit

6  discovery, the court may make such orders in regard to the failure as are just, including, under subpart

7  (C) an order rendering a judgment by default against the disobedient party.  In this case, Plaintiff seeks

8  the most severe sanction authorized by Rule 37(b)(2), an order striking Defendants' answers and

9  entering default judgments against them.  In regard to imposition of the severe sanction of dismissal or

10  default, *Henry v. Gill Industries,* 983 F.2d 943, 948 (9th Cir. 1993) states:

> Because the sanction of dismissal is such a harsh penalty, the district court must weigh five factors before imposing dismissal: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Porter v. Martinez*, 941 F.2d 732,733 (9th Cir. 1991) (citations and internal punctuation omitted).

16  The first two factors favor the imposition of sanctions in most cases, while the fourth factor cuts

17  against a dismissal or default sanction.  Thus, the key factors are prejudice and the availability of lesser

18  sanctions.  *Henry,* 983 F.2d at 948, *citing Wanderer v. Johnson*, 910 F.2d 652, 656 (9th Cir. 1990).

19  For severe sanctions to be proper, the conduct to be sanctioned must also be due to willfulness, fault or

20  bad faith by the losing party.  *Henry,* 983 F.2d at 947-48, *citing Fjelstad v. American Honda Motor Co.*,

21  762 F.2d 1334, 1337 (9th Cir. 1985); *see also Valley Engineers Inc. v. Electric Engineering Company*,

22  158 F.3d 1051 (9th Cir. 1998); *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337,

23  348 (9th Cir. 1995).  *Henry* states that "'disobedient conduct not shown to be outside the control of the

24  litigant' is all that is required to demonstrate willfulness, bad faith or fault." *Id.,* 983 F.2d at 948, *citing*

25  *Fjelstad,* 762 F.2d at 1341.  In deciding whether dismissal or default is warranted, the court may

26  consider all of the offending party's discovery conduct.  *Henry,* 983 F.2d at 947, citing *Adriana Int'l*

27  *Corp. v. Thoeren*, 913 F.2d 1406, 1411 (9th Cir. 1990).

28  In *Henry*, the plaintiff failed to provide relevant documents in response to requests for

1    production of documents and repeatedly delayed the taking of his deposition by cancelling it at the last

2    minute.  Plaintiff argued that defendant was not prejudiced because it eventually obtained all discovery

3    it was seeking, including his deposition.  The court stated, however, that a defendant suffers prejudice if

4    plaintiff's actions impair defendant's ability to go to trial or threaten the rightful decision of the case.  It

5    also noted that as a result of plaintiff's wrongful delaying actions, a key witness for defendant became

6    unavailable to participate in the defense.  The court held that plaintiff's failure to produce documents,

7    his disregard for discovery orders and his repeated failure to appear for his deposition justified the

8    district court's conclusion that his conduct was willful, in bad faith or at fault and justified the

9    imposition of the severe sanction of dismissal.  *Id.,* at 949.  The court also found that lesser sanctions

10   had been tried to obtain plaintiff's compliance and had failed.

11          In *Anheuser-Busch, Inc. v. Natural Beverage Distributors, Inc.*, 69 F.3d 337, 348 (9th

12   Cir.1995), the court affirmed the district court's order dismissing defendant's counterclaim where the

13   defendant falsely claimed that requested financial records were destroyed in a fire.  In holding that

14   counter-claimant's conduct was willful, in bad faith or at fault, the court stated:

15              It is well settled that dismissal is warranted where, as here, a party has
                engaged deliberately in deceptive practices that undermine the integrity of
16              judicial proceedings: "courts have inherent power to dismiss an action
                when a party has willfully deceived the court and engaged in conduct
17              utterly inconsistent with the orderly administration of justice." *Wyle,* 709
                F.2d at 589 (upholding dismissal of complaint pursuant to the court's
18              inherent power where plaintiff's denials of material fact were knowingly
                false and plaintiff willfully failed to comply with discovery orders);
19              (additional citations omitted).

20          *Anheuser-Busch* also rejected defendant's argument that plaintiff was not prejudiced because

21   the documents were produced two months before the scheduled commencement of trial, noting that the

22   court has "squarely rejected the notion that a failure to comply with the rules of discovery is purged by

23   belated compliance.  *Henry*, 983 F.2d at 947;  *see also North Am. Watch Corp.,* 786 F.2d at 1451

24   69 F.3d at 354."  In *Valley Engineers Inc. v. Electric Engineering Company*, 158 F.3d 1051, 1057 (9th

25   Cir. 1998), the court also stated that it is not always necessary for the court to first impose less severe

26   sanctions, or to give any explicit warning of the dismissal sanction in order for the sanction of dismissal

27   to be proper.  The court stated:

28              What is most critical for case-dispositive sanctions, regarding risk of

1
2
3
4
5

> prejudice and of less drastic sanctions, is whether the discovery violations "threaten to interfere with the rightful decision of the case." *Adriana*, 913 F.2d at 1412. While contumaciousness toward the court needs a remedy, something other than case-dispositive sanctions will often suffice. Dismissal is appropriate where a "pattern of deception and discovery abuse made it impossible" for the district court to conduct a trial "with any reasonable assurance that the truth would be available." *Id.,* at 1057-58, *citing Anheuser-Busch, Inc.,* 69 F.3d at 352.

6   Plaintiff also requests that this Court issue an order to show cause to Defendants why they

7   should not be found in contempt for violation of the Court's orders.  Fed.R.Civ.Pro. 37(b)(2) (D)

8   provides that the Court may also enter an order treating as a contempt of court the failure to obey any

9   orders, except an order to submit to a physical or mental examination.  Pursuant to 28 U.S.C. §

10  636(e)(6), a magistrate judge is required to refer contempt charges to the District Court and is required

11  to certify the facts to a district judge and may serve or cause to be served on the party subject to

12  contempt an order requiring such person to appear before the district judge on a date certain to show

13  cause why that person should not be adjudged by reason of the facts so certified.

14  ### 1.    Whether Defendants Have Willfully Violated the Courts' Orders Regarding Production of Documents.

15

16  Both the KXD and Sungale Defendants claim that their computer servers were damaged during

17  the January 2006 seizures and that they were therefore subsequently unable to produce records in

18  compliance with this Court's orders, #568, #581 and #595.  One would reasonably expect that

19  Defendants would have promptly notified the Plaintiff or the Court of the alleged damage to their

20  computer servers following the seizures and that Defendants would have requested or demanded

21  reimbursement for the damage and copies of their seized electronic records so that they could determine

22  what was seized and retrieve any electronic records that may have been lost or destroyed.  There is no

23  evidence, however, that Defendants notified Plaintiff or the Court at any time between January 2006

24  and March 2007 of the alleged damage to their computer servers and hard drives.  Defendants did not

25  mention such damage in their initial responses to Plaintiff's requests for production in October 2006 or

26  during the parties' meet and conference on November 15, 2006.  Although Plaintiff's motions #456 and

27  #458, filed on November 30, 2006 requested that the Court order Defendants to produce documents

28  previously seized by the Marshal/Plaintiff, Defendants' responses to Plaintiff's motions to compel filed

1   on December 18, 2006 also made no mention of alleged damage to their computer servers.  Defendants'

2   counsel also did not mention such damage during the January 12, 2007 hearing on the motions to

3   compel.  *See Transcript of Hearing on Pending Motions* #543.

4          Defendants first raised an issue regarding alleged damage to their computer servers in their

5   March 16, 2007 response, #590, to Plaintiff's motion for clarification of the Court's order granting the

6   motion(s) to compel.  The March 16, 2007 declaration of the KXD Defendant's general counsel, Mr.

7   Liu, indicated that the KXD Defendants were still in possession of their original computer server and

8   were attempting to restore the server and determine the extent and identity of the lost files.  The March

9   16, 2007 declaration of the Sungale Defendants' general manager, Qin Zhang, stated that Plaintiff

10  damaged its server hard drive and the hard drive of a sales manager's computer and that many files on

11  those hard drives had been lost and the Defendants had not been able to recover them.  Mr. Zhang's

12  declaration did not disclose that the Sungale Defendants had already disposed of the allegedly damaged

13  server and hard drives.  The Court's March 20, 2007 Order #595, at minimum, required Defendants to

14  preserve their servers for inspection if they continued to assert that they could not produce electronic

15  records based on the alleged damage to their servers.

16         Defendant Luo's August 2007 declaration indicates that between April and December 2006 the

17  KXD Defendants spent in excess of $11,000 to repair the server and purchase a replacement server after

18  which they discarded the original server.  The implication of Defendant Luo's declaration is that the

19  KXD Defendants had already discarded the original server prior to the Court's decisions on the motions

20  to compel and the motion for clarification.  The KXD Defendants have not explained the obvious

21  inconsistencies between Mr. Liu's and Defendant Luo's declarations. The KXD Defendants have not

22  provided a declaration from any computer technician or any other credible evidence to support their

23  assertions that the computer server was damaged during the January 2006 seizure.  The payment records

24  attached to Defendant Luo's August 2007 declaration do not provide any description of what the

25  payments were for.  Although these records refer to invoice numbers, the invoices themselves have not

26  been produced.  The failure to provide such key evidence is telling.

27         Defendant Luo's and the KXD Defendants' other conduct during this litigation also supports the

28  rejection of his declaration.  On February 12, 2007, the District Court granted Plaintiff's Motion for

1   Civil Contempt Sanctions against the KXD Defendants in which the Court found that the KXD

2   Defendants violated the January 2006 temporary restraining order and March 2006 preliminary

3   injunction order.  *See Order* #542, filed February 12, 2007, and *Nunc Pro Tunc* Correction of Order

4   #558, filed February 22, 2007.  The Court imposed substantial monetary fines on the KXD Defendants

5   for their past violations of the Court's orders and required them to pay future fines if they continued in

6   violation of the orders.  In addition, the Court required the KXD Defendants to submit to an audit by

7   Plaintiff and unannounced inspections so that Plaintiff could determine if continuing violations of the

8   orders occurred.  On August 31, 2007, the District Court also entered an Order Granting Plaintiff's *Ex*

9   *Parte* Application for Civil Contempt Sanctions and Order for Jingyi Luo A/K/A James Luo, to

10  Immediately Surrender His Passport and Show Cause Why He Should Not Be Incarcerated and For the

11  KXD Defendants' Business Operations To Be Shut Down #714.  In granting the order to show cause,

12  the Court stated that the KXD Defendants have a history of repeatedly ignoring the Court's orders.  On

13  September 21, 2007, the District Judge ordered that Defendant Luo be jailed for 30 days based on his

14  continued violation of the Court's orders.  Defendant Luo, therefore, is not a person whose testimony

15  should be accepted if it is not supported by competent evidence and is at odds with other evidence.

16      Mr. Zhang's August 2007 declaration states that a Chinese computer technician, Joey Zhong,

17  informed him in March 2006 that the Sungale Defendants' server and hard drives could not be repaired

18  and needed to be replaced.  Mr. Zhang now states that the Sungale Defendants disposed of the original

19  server in March 2006.  The Sungale Defendants have not provided a declaration from its computer

20  technician to support Mr. Zhang's assertions.  The Chinese language document that Mr. Zhang

21  represents is a receipt for the purchase of a new hard drive does not support the conclusion that the

22  Defendants' computer server and hard drives were damaged during the January 2006 seizures or that

23  electronic documents were irretrievably lost.

24      In contrast to the Defendants' unsupported assertions, Plaintiff has provided sworn declarations

25  from the computer technicians who copied the KXD and Sungale Defendants' hard drives during the

26  January 2006 seizures.  Both of these technicians state under oath that they did not remove the

27  Defendants' hard drives or damage them during the copying process and the servers were operating

28  normally when they left Defendants' premises.  These declarations are far more persuasive than the

19

1   Defendants' unsupported and highly questionable declarations.  Defendants have not provided any

2   evidence that shutting down the servers during the seizures would have damaged them or caused

3   records thereon to be lost or destroyed.

4          It appears that the KXD and Sungale Defendants now assert that the allegedly damaged servers

5   were discarded in 2006 to evade any order requiring that they produce the servers for independent

6   inspection and in an attempt to avoid a finding that they disposed of the servers in violation of the

7   Court's order #595.  Given the conflicting declarations of the KXD Defendants' representatives, and the

8   failure of the KXD and Sungale Defendants to provide this information in their March 16, 2007

9   response #590, the Court rejects such assertions.  Furthermore, even if the Defendants had discarded the

10  servers in 2006, they would still be subject to sanctions for violating the District Court's January 5,

11  2006 Temporary Restraining Order and Seizure Order #39, p.7, ¶ 3 and March 15, 2006 Order for

12  Preliminary Injunction # 252, p. 5, ¶ 3, which expressly prohibited Defendants from:

13          Destroying, disposing of, altering, transporting, hiding, concealing,
            secreting, or otherwise making unavailable to the Court, to Philips, and to
14          the United States Marshal, or to any law enforcement officer of any of the
            following:

15
            c)      Any documents or tangible things, *electronic files*, and business
16                  records that pertain to the manufacture, sale, offer for sale,
                    distribution, advertising, and marketing of the Counterfeit
17                  Products including, but not limited to, correspondence, sales and
                    supplier or customer journals, ledgers, invoices, purchase orders,
18                  inventory control documents, bank records, catalogues, recordings
                    of any type whatsoever, and all other business records and
19                  documents. (Emphasis added.)

20         Those orders should have clearly demonstrated to Defendants and their counsel that they were

21  prohibited from disposing of their computer servers and hard drives containing their electronic business

22  records without first notifying the Court or Plaintiff of the alleged damage to their servers.  Had they

23  done so, an independent inspection and determination could have been made whether the servers were

24  damaged and whether any electronic records were irretrievably lost.

25         A court has the inherent power to sanction a party for destroying relevant evidence which it

26  knows or should know it has a duty to preserve even absent a preservation order.  *Leon v. IDX Systems*

27  *Corp.*, 464 F.3d 951, 958-59 (9th Cir. 2006).  Rather than providing a defense to Plaintiff's

28  Contempt/Sanctions Motions, Defendants' assertions regarding the alleged damage to and disposal of

1     their computer servers support the conclusion that they have willfully violated the Court's orders.  Even

2     if the Court accepted the KXD and Sungale Defendants' assertions that their computer servers were

3     damaged during the January 2006 seizures, Defendants did not avail themselves of the opportunity to

4     obtain a copy of the seized electronic files which would have allowed them to at least produce relevant

5     records contained thereon.

6         *Anheuser-Busch, supra,* states that dismissal is warranted where a party has deliberately engaged

7     in deceptive practices that undermine the integrity of judicial proceedings.  As the Court stated in

8     *Valley Engineers Inc.*, 158 F.3d at 1058, "[t]here is no point to a lawsuit, if it merely applies law to lies.

9     True facts must be the foundation of any just result."  Based on the foregoing facts and circumstances

10     and the reasonable inferences to be drawn therefrom, the Court finds that Defendants' assertions

11     regarding the damage to their computer servers during the January 2006 seizures are false and that they

12     have attempted to deceive the Court and the Plaintiff by claiming that they are unable to comply with

13     this Courts' orders to produce relevant and discoverable documents.

14         It is difficult to resolve a document production dispute where, as in this case, the Plaintiff argues

15     that the Defendants have not produced relevant documents that they have or must have, and Defendants

16     argue that they have produced all documents responsive to the Court's orders that they have in their

17     possession, custody or control.  Defendants' limited and partial production of financial documents, the

18     production of only a few email communications, where the seized records indicate the existence of

19     voluminous email communications, and their failure to produce significant documents in the other

20     categories discussed in Plaintiff's motion all indicate that they have withheld relevant documents.

21         The Court's determination in this regard is certainly influenced by Defendants' false assertion

22     that their computer servers were damaged during the January 2006 seizures.  Those false assertions

23     persuade the Court that Defendants are also not being truthful when they assert that documents that one

24     would reasonably expect to exist, do not exist.  The Court's conclusion also is strengthened by the fact

25     that the Defendants have not filed required reports regarding their compliance with the preliminary

26     injunction order and that Plaintiff has not been able to move forward with the Court ordered audit of

27     Defendants' records.  As discussed in the next section, Plaintiff has also not been able to depose the

28     Defendants' officers and Rule 30(b)(6) deponents to question them under oath about the existence of

1    relevant documents and to further investigate whether Defendants have failed to produce relevant

2    documents in compliance with the Court's orders. The Court also rejects Defendants' assertion that

3    Plaintiff is not prejudiced because it already has most of the documents by virtue of the seizures.  The

4    Court previously rejected this assertion in its Order #595.  It is not Plaintiff's obligation to sift through

5    the voluminous seized electronic records in search for what Defendants are obligated to produce.

6    Furthermore, Defendants' willful failure to produce documents in compliance with the Court's orders

7    has unreasonably delayed the completion of discovery in this case.

8           **2.    Whether Defendants Should Be Sanctioned  For Their Failure to Appear for Depositions.**

9

10          Fed.R.Civ.Pro. 30(b)(1) provides that a party may take the deposition of any person upon

11   reasonable notice.  A party whose deposition has been noticed may seek a protective order under Rule

12   26(c), including an order that the deposition take place only at a designated time or place.  Rule 30 does

13   not, by its terms, require that the noticing party confer with opposing counsel before scheduling a

14   deposition.  The failure to meet and confer in scheduling a deposition, however, is a factor in deciding

15   whether a protective order should be granted.  *See Seabrook Medical Systems, Inc. v. Baxter Healthcare*

16   *Corp.*, 164 F.R.D. 232 (S.D. Ohio 1995) and *Valvida v. KMart Corp.*, 2000 WL 1739215 (D. Virgin

17   Islands 2000).

18          Absent a protective order or an order staying the deposition, the party, including its officers or

19   Rule 30(b)(6) deponents, is required to appear for a properly noticed deposition.  *Anderson v. Air West,*

20   *Inc.*, 542 F.2d 1090, 1093 (9th Cir. 1976)*;  Pioche Mines Consolidated, Inc. v. Dolman*, 333 F.2d 257,

21   269 (9th Cir. 1964).  *See also* Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2d*, §

22   2291, p. 721.   Rule 37(d) provides that the failure of a party to appear for deposition may result in the

23   imposition of sanctions under Rule 37(b)(2)(A), (B) or (C).  In  *Abiola v. Abubaker*, 2007 WL 898197

24   (N.D. Ill. 2007) *7, the court stated that if the noticing party refuses to reschedule a properly noticed

25   deposition, it is incumbent on the party whose deposition is noticed to move for a protective order.  The

26   noticed party does not have the option of sitting back, failing to appear, requiring the noticing party to

27   take action, and then crying foul to the court.  The severity of the sanction to be imposed, however,

28   depends on the extent to which the failure to appear was willful or in bad faith. *See Advisory*

1  *Committee Notes* to Rule 37(d).

2      The Ninth Circuit has strictly construed the language of Rule 37(d).  *See Estrada v. Rowland*, 69

3  F.3d 405, 406 (9th Cir. 1995) (holding that a party who physically appeared but refused to answer

4  questions at deposition was not subject to Rule 37(d) sanctions because the rule applies only when a

5  deponent literally fails to show up for a deposition session).  In *Gee v. City of Chicago Public Schools*,

6  2002 WL 1559704 (N.D. Ill. 2002), a *pro se* plaintiff refused to appear for a deposition.  Although

7  Defendant agreed to postpone the deposition to give plaintiff more time to determine its propriety,

8  plaintiff stated that she would not appear at any time.  Notwithstanding the plaintiff's expressed intent

9  not to appear for a deposition at any time, the court held that plaintiff was not subject to Rule 37(d)

10  sanctions for failing to appear at a deposition that did not actually go forward.  The court, instead,

11  ordered plaintiff to appear for deposition and cautioned her that she would be subject to sanctions,

12  including dismissal of her action, if she failed to appear.  In *In re Air Crash at Taipei Taiwan*, 2002 WL

13  32155477 (C.D.Cal. 2002), the plaintiff moved for Rule 37(d) sanctions against an officer of the

14  defendant who allegedly failed to appear for his deposition.  The scheduled deposition did not take

15  place on the date noticed, however, and the court found that there was an informal agreement that the

16  deposition would not proceed while the defendant pursued legal remedies to overturn the court's order

17  that the deponent appear for his deposition.  Relying on *Estrada v. Rowland* and *Gee, supra,* the court

18  held that plaintiff had failed to demonstrate that the witness actually failed to appear before the officer

19  who was to take his deposition and that sanctions under Rule 37(d) were not proper.

20      In this case, Plaintiff's counsel began making efforts to schedule the deposition of the

21  Defendants' officers and Rule 30(b)(6) deponents in December 2006 and/or January 2007.  Plaintiff

22  made those efforts in the context of Defendants having still failed to produce documents in response to

23  Plaintiff's requests for production and/or to serve responsive answers to interrogatories.  In addition, the

24  KXD Defendants violated the Court's temporary restraining order and preliminary injunction by failing

25  to submit required reports to the court detailing their compliance and based on their continuing to

26  engage in the sale of infringing products.  This conduct resulted in the February 2007 order #542

27  finding the KXD Defendants in civil contempt, ordering them to pay substantial fines and requiring

28  them to submit to an audit and inspections.  It is therefore understandable that Plaintiff would want to

1   obtain written discovery and the court ordered audit before taking Defendants' depositions.  It is also

2   understandable that Plaintiff was leery about deposing Defendants' officers and Rule 30(b)(6)

3   deponents in China.[4]

4          Plaintiff's counsel specifically raised the issue that Defendants' officers should be deposed in

5   the United States at the March 2, 2007 discovery conference.  The Court directed the parties to file

6   written status reports, including their positions and objections as to where the depositions should be

7   taken.  It should have been evident to the Defendants' counsel that the Court intended to enter an order

8   governing depositions based on the parties' status reports.  Plaintiff extensively briefed its position that

9   Defendants' depositions should be taken in the United States.  Defendants, however, did not set forth

10  any basis for their position that their Chinese witnesses should not be required to appear in the United

11  States.  While the Court did not specifically authorize responsive status reports, it also did not preclude

12  them.  Defendants had more than sufficient time before the March 27, 2007 order was entered in which

13  to submit a responsive brief or to request permission to do so.

14         Defendants did not file an objection to the Court's order #599.  Although Defendants' counsel

15  subsequently stated in his April 10, 2007 status report #614 that Defendants intended to move for

16  reconsideration of the order, no such motion was filed.  Defendants' counsel, Mr. Hedrick, states that

17  the Court denied his request at the April 12, 2007 conference to brief the issue regarding the locations

18  of the depositions of witnesses residing overseas.  *Opposition, Hedrick Declaration* #685, ¶ 38.

19  Contrary to counsel's assertion, the Court did not prohibit Defendants from filing a motion for

20  reconsideration or modification of the March 27, 2007 order.  While the Court declined to modify the

21  order during the April 12th hearing, it also stated on at least three occasions that the parties could file

22  further motions regarding depositions or other discovery matters.  The Court also stated that the parties

23  could resolve the issues regarding scheduling, content and location of depositions by good faith and

24  genuine efforts to confer.  The Court's Minute Order directed the parties to meet and confer regarding

25  depositions and discovery issues.

26  _____

27         [4]Plaintiff's counsel has also cited to this Court the problems they encountered in obtaining
    discovery in China in the related action in the Central District of California which also made them
28  reluctant, in this case, to agree to depose Defendants' officers in China.

1    At the hearing on June 1, 2007, Mr. Hedrick stated that Defendants were planning to file

2  motions for protective orders regarding the depositions of their Chinese witnesses for the reasons set

3  forth during the April 12, 2007 status conference. i.e., the problems that Defendants' officers would

4  have in obtaining visas.  This also demonstrates that Defendants were not operating under a

5  misimpression that the Court had prohibited them from filing motions regarding the location of

6  depositions.  Although the Court reminded Defendants' counsel that they had failed to take any action

7  in this regard, the Court once again did not prohibit Defendants from filing motions for protective

8  orders regarding the location of the depositions.  In fact, the Court's June 1, 2007 *Order* #645

9  contemplated that such motions would be filed.  The Court did not deny a motion to reconsider or

10  modify order #599 because no such motion was ever made.  Nor did the Court prohibit Defendants

11  from seeking relief from the March 27, 2007 order.  The absence of any such motion or order disposes

12  any basis for  Defendants' counsel's assertion to the contrary.  *See United States v. Afram Lines  (USA),*

13  *Ltd.*, 159 F.R.D. 408, 412-13 (S.D.N.Y. 1994), citing Fed.R.Civ.Pro. 72(a).

14    Notwithstanding the Court's June 1, 2007 order and despite the fact that Plaintiff rescheduled

15  several of the depositions until later in June or July 2007, Defendants still did not file a motion for

16  protective order.  In addition, neither the KXD nor Sungale Defendants filed responses to Plaintiff's

17  Contempt/Sanctions Motions in a timely manner that would have permitted the Court to address their

18  objections to the depositions prior to the expiration of the extended fact discovery cut-off date on July

19  18, 2007.  The Sungale Defendants filed a belated response on July 17, 2007, one day before the

20  discovery cut-off date.  The KXD Defendants did not respond to the Contempt/Sanctions Motion prior

21  to the hearing on July 24, 2007.  Defendants' counsel's excuse for not filing a motion for protective

22  order or a timely response to the Contempt/Sanctions Motions is that they were busy preparing for trial

23  in the related action in California and that they had previously scheduled trips or vacations in June

24  2007.  Such excuses, while generally inadequate, are even less acceptable here.  Defendants had nearly

25  two months from when the Court issued its March 27, 2007 order to when the depositions were first

26  noticed in which to address the issue regarding the location of depositions.  Thus, Defendants and their

27  counsel seek to excuse their failure to file a motion for reconsideration or for protective order prior to

28  the expiration of the extended discovery period because of their own inordinate delay.

The Court also considers Defendants' arguments that Plaintiff's counsel did not meet and confer with Defendants regarding the location or scheduling of the depositions after the April 12, 2007 status conference. Prior to the Court's March 27, 2007 order, Defendants had offered the dates of April 2-5 and 9-13 for deposing their witnesses in China and the United States. Plaintiff's counsel had rejected those date on March 19th and advised that Plaintiff wanted to obtain the audit before proceeding with the depositions. Once the Court entered its order regarding the location of depositions, it appears that Plaintiff was not amenable to deposing Defendants' witnesses in China. Although the Court stated during the April 12th conference that the parties should be able to resolve their differences through genuine efforts to confer, consistent with their previous pattern of behavior, the parties' counsel did not engage in meaningful efforts to resolve their dispute regarding the setting or location of depositions. On April 19th, Plaintiff demanded that Defendants provide dates for their officers and Rule 30(b)(6) deponents' depositions in the United States and erroneously suggested that the Court would not consider modification of its March 27, 2007 order. Defendants responded by offering to make their U.S. witnesses available for deposition between May 14-18 and to make their Chinese witnesses available in Hong Kong, but did not provide dates for those depositions. Plaintiff did not respond to this proposal and thereafter on May 22, 2007 served notices of deposition for early June 2007. Neither parties' conduct in this regard was consistent with the Court's order that they meet and confer.

Defendants are entitled to some credit for at least proposing a compromise regarding the depositions. Plaintiffs were not required, however, to agree to Defendants' offer to produce its witnesses for deposition in Hong Kong. This was particularly true in view of the fact that Defendants had not moved for reconsideration or modification of the March 27th order. Given Defendants' previous litigation conduct, it was also not unreasonable for Plaintiff to decline to depose Defendants' witnesses in Hong Kong. In any event, once Plaintiff noticed the depositions, it was incumbent on Defendants to either produce their officers for their depositions or timely move for a protective order.

The Court also considers the merits of Defendants' belated arguments that they could not produce their Chinese officers and Rule 30(b)(6) deponents for depositions in the United States because of their inability to obtain business visas to travel to the United States. Defendants request that the Court take judicial notice of information published on the website for the United States Consulates in

1  Guangzhou and Chengdu, China regarding the requirements and time lines for obtaining a non-

2  immigrant business visa to travel to the United States.  *See Defendants' Requests For Judicial Notice*

3  #684 and #685.  Having reviewed these documents, the Court is not convinced that Defendants' officers

4  could not have obtained visas to attend their depositions in the United States.  These documents

5  indicate that following September 11, 2001, changes in U.S. visa policy and procedures had increased

6  the amount of time it can take to obtain a visa.  The same documents state, however, that improved

7  interagency and automated procedures have reduced delays and speeded up visa processing.  The State

8  Department's goal is visa delivery in no more than 30 days from the time of application in most cases.

9  Sometimes it can take less than that and sometimes longer.  Thus, if Defendants' officers had timely

10  requested visas, assuming they did not already have them, they could have presumably obtained visas to

11  appear for their depositions in the United States in June or July 2007.  Defendants have not

12  demonstrated that it would have taken more than 6 months to obtain travel visas.  Nor have they

13  provided any evidence that the Chinese Government would not have permitted them to travel to the

14  United States for their depositions.

15       Of course, if Defendants had demonstrated that their officers were denied visas or encountered

16  delays beyond their control in obtaining visas, then the Court could have either granted additional time

17  for the officers to appear for depositions in the United States or modified its March 27, 2007 order.

18  Defendants, however, have not shown that their officers applied for visas despite their knowledge that

19  the Court had ordered them to appear in the United States for depositions.  This is like arguing that one

20  missed an airline flight on which he never purchased a ticket.  In any event, Defendants should have

21  timely raised and documented this issue in their March 12, 2007 status report or by a written motion for

22  reconsideration, or a motion for protective order filed with the Court in April, May or June 2007 at the

23  latest.  Defendants chose, however, to take no action.  The lack of merit in Defendants' argument

24  perhaps explains why Defendants never filed a motion for reconsideration or protective order following

25  the Court's March 27, 2007 order.

26       The Court's March 27, 2007 Order #599 did not order Defendants to appear for depositions at

27  any particular date and time.  Rather, it simply authorized the Plaintiff to depose the Defendants'

28  officers and Rule 30(b)(6) deponents in the United States.  Defendants, therefore, did not violate Order

1    #599 or any other order issued by the Court in failing to produce their officers for deposition on the

2    particular dates noticed by Plaintiff.  Whether Defendants should be sanctioned for their officers'

3    failure to appear for their noticed depositions can only be based on Fed.R.Civ.Pro. 37(d).  The sanctions

4    available under Rule 37(d), however, do not include contempt.  *See Schleper v. Ford Motor Co.*, 585

5    F.2d 1367, 1371 n.3 (8th Cir. 1978).  The Court's ability to impose sanctions on Defendants pursuant to

6    Rule 37(d) is also called into question by the manner in which Plaintiff proceeded.

7           Plaintiff has only provided the Court with evidence that Defendant Shenzhen Kaixinda

8    Electronics Co., Ltd. failed to appear for its deposition on June 5, 2007.  *See Motion* #658, Exhibit 13.

9    Following the June 1, 2007 hearing, Plaintiff renoticed the other depositions of Defendants for July

10   2007.  Plaintiff then filed its instant Contempt/Sanctions Motions on June 21 and 29, 2007.  Plaintiff

11   has not submitted evidence to the Court that it proceeded with the other Defendants' depositions on the

12   dates noticed and made a record of the Defendants' failure to appear.  While the Court has little doubt,

13   based on the facts set forth above, that Defendants' officers would not have appeared for their

14   depositions on the dates noticed, the Ninth Circuit has held that Rule 37(d) is to be strictly construed.

15   *Estrada v. Rowland*, *supra.*   The district court decisions in *In re Air Crash at Taipei Taiwan* and *Gee v.*

16   *City of Chicago Public Schools,* relying on *Rowland,* also indicate that Rule 37(d) sanctions are not

17   proper unless the noticing party actually proceeds with the deposition and makes a record of the party's

18   failure to appear.  With the exception of Defendant Shenzhen Kaixinda Electronics Co., Ltd., Plaintiff

19   has not demonstrated that it complied with the strict requirements of Rule 37(d) in order for the Court

20   to sanction Defendants under that rule.

21          Although the Court concludes that sanctions under Rule 37(d) are not applicable, except as to

22   Defendant Shenzhen Kaixinda Electronics Co., Ltd., the Court is entitled to consider the Defendants'

23   conduct regarding their depositions in deciding whether Defendants' other conduct in violating the

24   Court's orders was willful and in bad faith.  *Henry*, 983 F.2d at 947, *citing Adriana Int'l Corp. v.*

25   *Thoeren*, 913 F.2d 1406, 1411 (9th Cir. 1990).  Defendants' failure to move for reconsideration of the

26   March 27, 2007 order or to file a motion for protective order regarding the depositions is consistent

27   with their other conduct in not responding to written discovery and attempting to delay the completion

28   of discovery.  The Court takes note of Defendants' counsel's assertion that the Court denied him the

28

1   opportunity to brief the issue regarding the location of depositions when the record clearly establishes

2   the contrary.  Although Defendants objected to the Court extending the discovery cut-off date on June

3   1, 2007, they also failed to take any action which would have allowed the Court to determine the issue

4   regarding the location and dates of their depositions so that the issues could be resolved within the time

5   allowed for discovery.  Finally, of course, Defendants failed to timely respond to the

6   Contempt/Sanctions Motion.  All of this is consistent with an unreasonable pattern of delay.

7                                        **CONCLUSION**

8          The record in this case demonstrates a consistent pattern of discovery delay and obstruction by

9   Defendants directed at preventing Plaintiff from obtaining relevant evidence to prove its claims.  That

10  dilatory and obstructive discovery conduct began with Defendants' failure to produce any documents in

11  response to Plaintiff's requests for production of documents and its assertion of baseless boilerplate

12  objections.  This conduct continued through the meet and confer process regarding Plaintiff's attempt to

13  obtain compliance with its discovery requests and up through the hearing on the motions to compel.

14  Defendants' misconduct is compounded by their subsequent attempt to deceive the Court that their

15  computer servers were damaged during the January 2006 seizures, by their conduct in allegedly

16  disposing of those servers in violation of Court orders, and by their failure to simply obtain a copy of

17  seized electronic records so that they could, at least partly, comply with the Court's orders requiring

18  them to produce relevant documents.

19         Defendants' conduct, as a whole, evidences a willful and bad faith intention to prevent the fair

20  and expeditious resolution of this litigation.  The Court also finds that Defendants' misconduct has

21  prejudiced Plaintiff's ability to obtain a fair trial on the merits because Defendants have not produced

22  relevant documents in compliance with the Court's discovery orders, and Defendants have prevented

23  completion of discovery within the extended discovery period.

24         The Court further finds that imposition of less severe sanctions would not adequately address

25  Defendants' failure to comply with court rules or orders, or rectify the prejudice and unreasonable delay

26  that they have caused.  The Court previously imposed monetary sanctions on Sungale and KXD

27  Defendants for their failure to timely produce documents.  The District Judge has also imposed much

28  more severe monetary contempt sanctions on the KXD Defendants for their failures to comply with its

                                             29

1  orders which have had little or no positive impact on their subsequent behavior.  Additionally, this

2  Court warned Defendants in its March 20, 2007 Order #595 of the potential for the imposition of severe

3  sanctions if the Court determined that they falsely claimed that their computer servers were damaged

4  during the January 2006 seizures.  Defendants and their counsel have demonstrated a disregard both for

5  the Court's orders and the threats of further sanctions.

6  The Court further finds that Defendants' violation of this Court's orders #568, #581 and #595,

7  as well as the District Judge's seizure and preliminary injunction orders, also support the issuance of an

8  order that the Defendants show cause why they should not be found in contempt of Court based on their

9  failure to produce documents in violation of the Court's orders, their false statements regarding the

10  alleged damage to their computer servers and their conduct in destroying the computer servers in

11  violation of Court orders, thereby preventing an independent inspection regarding their allegations that

12  the servers were damaged.  Accordingly,

13  **<u>RECOMMENDATION</u>**

14  **IT IS HEREBY RECOMMENDED** that Philips' Emergency Motion For: 1. Order to Show

15  Cause Why KXD Defendants Should Not Be Held in Civil Contempt; 2. Order for Discovery Sanctions

16  (#658) and Philips' Emergency Motion For: 1. Order to Show Cause Why Sungale Defendants Should

17  Not Be Held in Civil Contempt; 2. Order for Discovery Sanctions (#662) be **granted** and that the

18  Sungale and KXD Defendants' answers be stricken and their defaults entered  based on their willful and

19  bad faith violation of the Court's orders #568, #581 and #595 and the District Court's Order #39 and

20  Preliminary Injunction Order #252.

21  **IT IS FURTHER RECOMMENDED** that Defendant Shenzhen Kaixinda Electronics Co.,

22  Ltd. also be sanctioned for its failure to appear for its deposition pursuant to Rule 37(d) and Rule

23  37(b)(2) and that its answer be stricken and its default entered on that ground as well.

24  This recommendation does not apply to Defendant KXD Technology Inc. which has filed a

25  petition for bankruptcy and is currently protected by the automatic stay.

26  **<u>ORDER TO SHOW CAUSE</u>**

27  The Court hereby certifies the foregoing facts supporting a finding that the KXD and Sungale

28  Defendants are in contempt of court and that they should be ordered to show cause why they should not

30

1   be held in contempt of the Court's orders #568, #581 and #595 and the District Court's Order #39 and

2   Preliminary Injunction Order #252 for their failure to produce documents in compliance with the

3   Courts' orders and for the destruction of their computer servers in violation of the Courts' orders.

4   Accordingly,

5        **IT IS HEREBY ORDERED** that the KXD and Sungale Defendants appear before District

6   Judge Roger Hunt on **<u>Wednesday, October 10, 2007 at 1:30 p.m. in Courtroom 6C</u>** to show cause

7   why they should not be found in contempt for violation of the Court's orders #568, #581 and #595 and

8   the District Court's Order #39 and Preliminary Injunction Order #252 for their failure to produce

9   documents in compliance with the Courts orders and for the destruction of their computer servers in

10  violation of the Court's orders.

11       This order does not apply to Defendant KXD Technology Inc. which has filed a petition for

12  bankruptcy and is currently protected by the automatic stay.

13  <center>**NOTICE**</center>

14       Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in

15  writing and filed with the Clerk of the Court within ten (10) days.  The Supreme Court has held that the

16  courts of appeal may determine that an appeal has been waived due to the failure to file objections

17  within the specified time.  *Thomas v. Arn*, 474 U.S 140, 142 (1985).  This circuit has also held that (1)

18  failure to file objections within the specified time and (2) failure to properly address and brief the

19  objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues

20  from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi*

21  *Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

22       DATED this 2nd day of October, 2007.

23

24                              GEORGE FOLEY, JR.

25                              United States Magistrate Judge

26

27

28

<center>31</center>