# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| KONINKLIJKE PHILIPS ELECTRONICS N.V., a Netherlands Corporation, | Case No.: 2:05-cv-01532-RLH-GWF |
| | Case No.: 2:06-cv-00101-RLH-GWF |
| Plaintiff, | |
| vs. | **FINDINGS OF FACT, CONCLUSIONS OF LAW, and DECISION** |
| KXD TECHNOLOGY, INC.; ASTAR ELECTRONICS, INC.; ASTAR ELECTRONICS USA, INC.; SHENZHEN KXD MULTIMEDIA CO., LTD.; SHENZHEN KAIXINDA ELECTRONICS CO., LTD.; KXD DIGITAL ENTERTAINMENT, LTD.; JINGYI LUO, a/k/a JAMES LUO; FUSHENG LIU, a/k/a LIU FUSHENG, a/k/a FU SHENG LIU; SUNGALE GROUP, INC.; SUNGALE ELECTRONICS (SHENZHEN), LTD.; AMOI ELECTRONICS, INC.; AMOI ELECTRONICS CO., LTD.; AMOI ELECTRONICS, LTD.; CHINA ELECTRONICS CORPORATION; AMOISONIC ELECTRONICS, INC.; INTERNATIONAL NORCENT TECHNOLOGY, INC.; NORCENT HOLDINGS, INC.; SHANGHAI HONGSHENG TECHNOLOGY CO., LTD.; SHENZHEN NEWLAND ELECTRONIC INDUSTRY CO., LTD.; DESAY A&V (USA), INC.; DESAY A&V SCIENCE & TECHNOLOGY CO., LTD.; DESAY HOLDINGS CO., LTD.; XORO ELECTRONICS (SHANGHAI), LTD.; SHENZHEN XORO ELECTRONICS CO., LTD.; MAS ELEKTRONIK AG | |

AO 72
(Rev. 8/82)

1  CORPORATION; SHENZHEN ORIENTAL      )
   DIGITAL TECHNOLOGY CO., LTD.; and    )
2  JOHN DOES 1 THROUGH 20,              )
                                        )
3              Defendants.              )
   _____)
4

5

6          This matter comes before the Court on Koninklijke Philips Electronics N.V.'s

7  ("Philips") Motion for Default Judgment (Dkt. #810) Against Defendants Sungale Group, Inc.,

8  Sungale Electronics (Shenzhen), Ltd., and Amoisonic Electronics, Inc. (collectively "Sungale

9  Defendants") filed December 19, 2007 ("Sungale Default Judgment Motion").  The defaults

10 having been entered as to all these Defendants, the Court held a Hearing on June 11 and 12, 2008,

11 to determine the amount of damages.  Accordingly, the Court having reviewed and considered all

12 papers submitted in support of and in Opposition to Philips' Sungale Default Judgment Motion,

13 other relevant pleadings, evidence presented in this matter, and having considered arguments of

14 counsel, now makes the following ruling:

15                          FINDINGS OF FACT

16 **A. Philips' Rights**

17         1.     Philips is a Netherlands Corporation having an office and place of business in

18 Amsterdam, Netherlands.

19         2.     Philips, along with other corporations, contributed to the development of digital video

20 (or versatile) disc ("DVD") recorders and recordable disks.  Philips is the exclusive owner, by

21 assignment, of the DVD+ReWritable & Design trademark, which was registered to Sony

22 Kabushiki Aisha Corporation on August 20, 2002, on the Principal Register of the United States

23 Patent and Trademark Office, Reg. No. 2,610,036.  The DVD+ReWritable & Design trademark is

24 associated with and used on the following goods: blank magneto-optical discs; pre-recorded

25 magneto-optical discs featuring music, musical data, motion pictures, photographs and computer

26 programs designed to simplify the use of computers; magneto-optical/optical/magnetic disc drives;

and computers.  These goods include DVD+R/+RW recorders, DVD+R/+RW computer drives (both internal and external) and DVD+RW discs.

**B.  The Sungale Defendants**

3.    Sungale Group, Inc. ("Sungale Group") is a corporation organized and existing under the laws of California, with an office and principal place of business at 13358 Monte Vista Avenue, Chino, California, 91710.

4.    Electronics (Shenzen), Ltd. ("Sungale Shenzhen"), is an entity existing under the laws of the Peoples' Republic of China, with an office and principal place of business at Yangyong Industrial Park, Baoan District, Shenzhen, China.

5.    Amoisonic Electronics, Inc. ("Amoisonic"), is an entity of unknown origin with principal places of business at 13358 Monte Vista Avenue, Chino, California, 91710, the same principal place of business for Defendant Sungale Group.

6.    The Sungale Defendants are all related to each other, have an implied collaborative presence at the 2006 CES, represent a global business enterprise, are "inextricably intertwined in each others corporate and business relationships," and some even used the same address as their principal place of business.  (*See* Dkt. #348, Order 19–24.)

**C.  Sungale's Infringing Acts Before the First Amended Complaint**

7.    The Sungale Defendants are not authorized Philips recorder licensees.

8.    This civil action arose out of Defendants' unauthorized manufacture, importation, promotion, distribution, advertising, distribution, sale, and/or offer for sale of unauthorized merchandise bearing marks that are copies of Philips' DVD+ReWritable & Design trademark.

9.    Philips had information that the Sungale Defendants would exhibit, display, and/or distribute advertisements, brochures, booklets, pamphlets, fliers, and other types of promotional materials in which the Sungale Defendants depicted products, merchandise, and/or articles of goods bearing the DVD+ReWritable & Design trademark without Philips' consent ("Counterfeit Products") and would exhibit and offer for sale certain Counterfeit Products at the 2006 Consumer

AO 72
(Rev. 8/82)

Electronics Show ("CES") in Las Vegas, Nevada.  The introduction of these Counterfeit Products harms Philips, Philips' licensees, and the attendees of the CES by creating confusion that the Counterfeit Products are genuine.

10.     Philips sent letters, dated December 16, 2005, to Sungale Group and Sungale Shenzhen demanding that they not display or offer for sale any Counterfeit Products at the 2006 CES and that they cease and desist counterfeiting Philips' DVD+ReWritable & Design mark.

11.     The Sungale Defendants were on actual notice that Philips is the owner of the DVD+ReWritable & Design trademark and that the Sungale Defendants' manufacture, distribution, offers to sale, and/or sale of unlicensed product bearing the DVD+ReWritable & Design trademark is a violation of federal law.

12.     Sungale offered for sale multiple DVD+R/+RW recorders, model numbers DR-601 and DR-603, bearing an identical counterfeit of Philips' DVD+ReWritable & Design mark.

**D.  Procedural History**

13.     On December 28, 2005, Philips filed a Complaint seeking protection of its DVD+ReWritable & Design trademark from the Sungale Defendants' counterfeiting and other infringing activities.

14.     On January 5, 2006, Sungale was served with the Summons and Complaint in this action.

15.     On January 5, 2006, the Court issued an amended temporary restraining order ("TRO") and seizure order to protect Philips' DVD+ReWritable & Design mark.

16.     The TRO prevented the Sungale Defendants and all persons and entities in participation with the Sungale Defendants who received actual notice of the order from assisting or inducing, directly or indirectly, the following activities: "Manufacturing, importing, exporting, distributing, shipping, introducing into commerce, offering for sale, selling, returning, disposing of, packaging, re-packaging, marketing, or supplying any goods that bear, embody, display, or affix the DVD+ReWritable & Design mark."  (Dkt. #39.)

17.     On January 6, 2006, the Court issued a seizure order upon which the U.S. Marshals Service seized from Sungale's headquarters, forty-six DR-601 recorders, and two DR-603 recorders, each bearing or depicting a counterfeit of Philips' DVD+ReWritable & Design mark. Three hundred DVD+R/+RW recorders, model number DR-601, were seized from South Bay Logistics.  The U.S. Marshals Service also seized advertising materials featuring Counterfeit Products from Sungale's booth at the 2006 CES.

18.     On March 15, 2006, the Court issued a preliminary injunction enjoining the same conduct prohibited by the TRO and ordered each of the Sungale Defendants to file sworn reports ("Compliance Reports") "setting forth in detail the manner and form in which the compliance with [the preliminary injunction] was made."  (Dkt. #252.)

19.     The preliminary injunction required that each Defendant should "provide the Court and Philips' counsel with a report setting forth an inventory containing the identity and amount of items recalled no later than thirty (30) calendar days" ("Recall Reports").  (*Id.*)

**E.  Sungale's Contempt and Refusal to Comply With the Court's Orders**

20.     On June 29, 2007, Philips filed a Motion for Civil Contempt Sanctions Against the Sungale Defendants ("Civil Contempt Motion").  Philips' Civil Contempt Motion presented substantial evidence to the Court of the Sungale Defendants' active, willful, and repeated violations of the Court's orders, including evidence that they failed to file Compliance Reports, failed to properly respond to Philips' written discovery requests, and failed to produce specific categories of documents as ordered by this Court.

21.     The Sungale Defendants have deliberately, and repeatedly violated this Court's orders.  For example:

•       From January 2006 to May 2006, investigators purchased Sungale Defendants' Counterfeit Products from third parties such as buy.com, fotoconnection.com, beachaudio.com, and mobiletraxx.com.

•       The Sungale Defendants have not filed satisfactory Compliance Reports.

- The Sungale Defendants destroyed one of their servers which contained information regarding their infringement so that discovery would be obstructed.

- The Sungale Defendants continued to display and advertise Counterfeit Products in April 2006 on their website located at www.sungale.com after they were served with the TRO and preliminary injunction.

**F.  Magistrate Judge Foley's Report and Recommendation**

22.    On October 2, 2007, Magistrate Judge Foley filed a report and recommendation ("R&R") which recommended that the Sungale Defendants' Answers should be stricken and defaults entered for contempt.  (Dkt. #753.)

23.    The Sungale Defendants failed to produce substantial categories of documents as ordered, including financial records, advertising, inventory documents, e-mail correspondence, and attorney-client and attorney work-product documents for which the Sungale Defendants waived their privilege objections.

24.  The Sungale Defendants destroyed electronic evidence, made false statements to the Court regarding the alleged damage to their computer server, and destroyed the computer server from which documents were seized, thereby preventing an independent inspection regarding the assertions that the server was damaged.

25.    The Sungale Defendants' conduct evidences a willful and bad faith intention to prevent the fair and expeditious resolution of this litigation.  The Sungale Defendants have not produced relevant documents in compliance with discovery orders, and have prevented completion of discovery within the extended discovery period.  Therefore, Defendants' misconduct has prejudiced Plaintiff's ability to obtain a fair trial on the merits.

**G.  The Sungale Defendants' Defaults**

26.  Based on Magistrate Judge Foley's findings, the Sungale Defendants' consistent pattern of discovery delay and obstruction directed at preventing Plaintiff from obtaining relevant evidence to prove its claims, this Court adopted the R&R's findings, struck the Sungale

AO 72
(Rev. 8/82)

1    Defendants' Answers to the Original Complaint, and ordered that the Sungale Defendants' defaults

2    be entered on October 16, 2007.

3         27.   On September 27, 2007, Plaintiff filed its First Amended Complaint ("FAC") to add

4    Fusheng Liu and Astar Electronics USA, Inc. as Defendants.  The Sungale Defendants filed

5    Answers to the FAC on October 9, 2007.  The Court struck the Sungale Defendants' Answers to

6    the FAC on May 9, 2008, holding that the defaults entered on October 16, 2007, were not mooted

7    or opened by: (1) the FAC, or (2) the Sungale Defendants' Answers to the FAC.

8    **H.  Philips' Damages and Attorneys' Fees and Costs Incurred by Sungale's Infringing**
     **Activity and Contemptuous Conduct**
9

10        28.   The Sungale Defendants sold at least 222 units of the allegedly infringing DR-601

11   product for gross revenues of $35,206 from April 2004 through August 2005.  The Sungale

12   Defendants imported into the USA at least 800 cartons of Counterfeit Products in April 2004.

13                                   CONCLUSIONS OF LAW

14   **A.  Jurisdiction**

15        29.   This Court has original subject matter jurisdiction over the claims in this action that

16   relate to trademark, counterfeiting, infringement, dilution, false designation of origin, and false

17   description pursuant to the provisions of sections 34(a) and 39 of the Lanham Act, 15 U.S.C. §§

18   1116(a), 1112(a), and 28 U.S.C. §§ 1331, 1338(a) & (b).  This Court has supplemental jurisdiction

19   over the claims which arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a)

20   because the state law claims are so related to the federal law claims that they form part of the same

21   case or controversy and derive from a common nucleus of operative facts.  Venue properly lies in

22   this district under 28 U.S.C. § 1391 (b) & (d).

23   **B.  Philips Has Complied with Fed. R. Civ. P. 55(a) and Fed. R. Civ. P. 54(c)**

24        30.   Entry of default judgment is governed by Fed. R. Civ. P. 55.  Philips has satisfied the

25   procedural requirements for default judgment pursuant to Fed. R. Civ. P. 55(a) and Fed. R. Civ. P.

26   54(c).

AO 72
(Rev. 8/82)

31.     Each of the Sungale Defendants' defaults were properly entered.

32.     Because Philips does not request relief that differs from or exceeds that prayed for in the FAC, the application for default judgment complies with Fed. R. Civ. P. 54(c).  *See Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).

33.     The Ninth Circuit holds that a district court may consider the following factors (the "*Eitel* factors") in exercising its discretion to award a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

**i.  Philips Will Suffer Prejudice if Default Judgment is not Granted**

34.     For this *Eitel* factor, the Court considers whether Plaintiff will suffer prejudice if the Court does not enter default judgment against the Sungale Defendants.  *See PepsiCo., Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  The Sungale Defendants have prevented a fair trial on the merits through needlessly obstructing discovery and by destroying evidence.  The Court finds that if it does not enter default judgment, Plaintiff would be without other recourse for recovery and thus will suffer prejudice.

**ii.  Philips Properly Pled the Elements for Each Cause of Action**

35.     The next two *Eitel* factors require a plaintiff to state a claim on which the plaintiff may recover.  *Philip Morris USA*, 219 F.R.D. at 499 (citation omitted).

36.     A defendant's liability is deemed established upon default, and all findings of facts necessary to support liability are accepted as true.  *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990); see also *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.")

37.     In this case, Philips has adequately pled all of the following claims against the

AO 72
(Rev. 8/82)

Sungale Defendants: (1) federal trademark infringement and counterfeiting (15 U.S.C. § 1114(1));
(2) federal unfair competition and false designation of origin (15 U.S.C. § 1125(a)); (3) federal
trademark dilution (15 U.S.C. § 1125(c)); (4) deceptive trade practices (N.R.S. § 598.0915); and,
(5) common law trademark infringement and unfair competition.

38.     Plaintiff has alleged and shown that it is the exclusive owner of the
DVD+ReWritable & Design mark, that the Sungale Defendants knew Philips was the exclusive
owner before the 2006 CES, that the Sungale Defendants willfully used the same mark in
commerce with the intent to confuse consumers, that the Sungale Defendants used the same
channels of commerce as Plaintiff to market the Counterfeit Products, and willfully used the mark
in an infringing manner on the same type of goods Plaintiff markets.  Therefore the Court finds
that the pleading requirements are met for each claim for relief.  *See Jada Toys, Inc. v. Mattel, Inc.*
518 F.3d 628, 632 (9th Cir. 2008) (listing factors to consider to show likelihood of confusion);
*A.L.M.N., Inc. v. Rosoff*, 757 P.2d 1319, 1324 (Nev. 1998) (using similar factors to determine
common law infringement in Nevada).

**iii.  Sum of Money at Stake in Relation to the Sungale Defendants' Conduct**

39.     Pursuant to the fourth *Eitel* factor, the Court must consider the amount at stake in
relation to the seriousness of the Sungale Defendants' conduct.  *Philip Morris USA*, 219 F.R.D. at
499 (citation omitted).

40.     The Lanham Act provides that plaintiffs may elect an award of statutory damages at
any time before final judgment is rendered in the amount of:

> (1) not less than $500 or more than $100,000 per counterfeit mark per type of goods
> or services sold, offered for sale, or distributed, as the court considers just; or (2) if
> the court finds that the use of the counterfeit mark was willful, not more than
> $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale,
> or distributed, as the court considers just.

15 U.S.C. § 1117(c).

41.     Philips has elected to recover an award of statutory damages from the Sungale
Defendants.  Furthermore, Philips alleges that the Sungale Defendants willfully infringed one of

Philips' marks.  The allegation of willful infringement is deemed admitted because of the Sungale Defendants' default.

42.  The Court also finds that independent of the admission through default, the Sungale Defendants' advertisement of the Counterfeit Products at the CES, failure to file Recall Reports, failure to file Compliance Reports, general obstruction to discovery, and the continued distribution of Counterfeit Products after the TRO and preliminary injunction were issued manifest that the infringement was done willfully.  Therefore, Philips is entitled to recover up to $1,000,000 from the Sungale Defendants.

43.  The Sungale Defendants argue however that there is very little evidence of infringement on their part, especially in comparison to other Defendants in this case.  Further, the Sungale Defendants also argue that if there was more infringement that Plaintiff would have been able to discover it with Plaintiff's vast resources.

44.  The Sungale Defendants' arguments improperly place the burden on Plaintiff to produce evidence of infringement because the Sungale Defendants have deliberately obstructed discovery.  This obstruction has needlessly multiplied the Plaintiff's attorney fees and costs.  The resulting lack of evidence should not therefore serve as a basis for lessening the statutory award.

45.  Moreover, it would be improper to lessen the award simply because the Sungale Defendants' infringement is not quite to the same degree as other Defendants in this case.

46.  Here, there is evidence that the Sungale Defendants sold at least 222 units of the allegedly infringing DR-601 product for gross revenues of at least $35,206 from April 2004 through August 2005, and that the Sungale Defendants imported into the USA at least 800 cartons of goods containing the allegedly infringing products in April 2004.

47.  The average revenue per DR-601 recorder, based on these numbers was $158.59.  Therefore, for a shipment of 800 recorders, the total revenue would be $126,872.  Therefore, if actual damages were sought instead of statutory damages, and the damages were trebled pursuant to 15 U.S.C. § 1117 (a)–(b), then the award could be $380,616, on just this shipment alone.

48.     Because, the Sungale Defendants have obstructed discovery and have not filed satisfactory Compliance or Recall Reports, the Court cannot gauge what the Sungale Defendants have done to comply with the Court's preliminary injunction.  The Court has no evidence that the Counterfeit Products being sold by third parties after the TRO and preliminary injunction were filed, were actually unavailable for recall.  The Court also cannot be certain that it has evidence of all the infringement that has occurred or the revenue that has been gained from that infringement.

49.     Therefore the Court finds that the maximum statutory amount of $1,000,000 for willful infringement is not excessive as compared to the Defendants' actions.

### iv.  No Possibility of Dispute of Material Fact Exists

50.     The fifth *Eitel* factor weighs the possibility of a dispute regarding any material facts in the case.  *Philip Morris USA*, 219 F.R.D. at 500.

51.     In the instant action, the Sungale Defendants' Answers were stricken for their failure to comply with discovery orders, for destruction of evidence, and for contumacious behavior to the Court.  Therefore any lack of evidence for Plaintiff's claims will not be ascribed to Plaintiff.

52.     Furthermore, Plaintiff's claim for statutory damages only requires a showing that the Sungale Defendants willfully infringed, by offering to sell or distributing one of Plaintiff's products, on one occasion.  There is more than sufficient evidence that this occurred as to the Counterfeit Product DR-601.  Therefore, the Court does not doubt the legitimacy of Plaintiff's claims for this relief.  *See Eitel*, 782 F.2d at 1472 (district court's reservations of legitimacy of the claims for relief can serve to deny a motion for default judgment).

### v.  The Defaults Did Not Result from Excusable Neglect

53.     The sixth *Eitel* factor considers the possibility that default resulted from excusable neglect.  *Id.*

54.     The Sungale Defendants received numerous notices, including notice of the Complaint, TRO, preliminary injunction, discovery orders, motion for entry of default, and the order entering default on the original Complaint.  The Sungale Defendants have been represented

1  by Counsel throughout these proceedings.  Therefore, the Court finds there is no excusable neglect

2  in this instance.

3       **vi.  The Strong Policy Favoring Decisions on the Merits**

4       55.     The Sungale Defendants' failures and defaults in this case are due to their own

5  willful conduct, obstruction of discovery, and destruction of evidence.  It would be patently unfair

6  at this point to force Plaintiff into a trial under these circumstances.  The Sungale Defendants

7  could have avoided default had they been more forthcoming.  The Sungale Defendants have

8  forfeited any right to have the case heard on its merits.

9       56.     Accordingly, and for the reasons set forth above, the Court finds that all the *Eitel*

10  factors weigh in favor of granting default judgment against the Sungale Defendants.

11  **C.  Philips Is Entitled to the Relief Requested**

12       57.     The issuance of a permanent injunction, an award of monetary damages, and

13  recovery of attorney fees and costs are the proper subjects of a default judgment for violations of

14  the Lanham Act.  *Philip Morris USA*, 219 F.R.D. at 501–503.

15       **i.  Philips Is Entitled to a Permanent Injunction**

16       58.     Since injunctive and other equitable relief may be granted in accordance with the

17  principles of equity to prevent violations of trademark laws, pursuant to 15 U.S.C. §§ 1116(a),

18  1125(c)(1), this Court enjoins the Sungale Defendants from infringing Philips' DVD+ReWritable

19  & Design trademark.

20       59.     The threat of continuing infringement is evident in light of the strong market for

21  Philips' products, its licensees' products, and the Sungale Defendants' correlating disregard for

22  Philips' trademark rights and their failure to comply with the Court's orders in this litigation.

23  Therefore, granting a broad permanent injunction for all of Philips' trademarks is warranted.

24       **ii.  Philips is Entitled to an Award of Statutory Damages**

25       60.     Pursuant to 15 U.S.C. § 1117(c)(2), Philips seeks to recover an award of statutory

26

AO 72
(Rev. 8/82)

damages for willful infringement.  Willfulness can be inferred from ongoing abuse after having received notice.  *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002); *Discovery Commc'ns, Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1291–92 (C.D. Cal. 2001) (same).  "A determination of willfulness may also rest on defendant's failure to cooperate in discovery or its violation of court orders." *Rolex Watch U.S.A., Inc. v. Zeotec Diamonds, Inc.*, 2003 WL 23705746, *4 (C.D. Cal. Mar. 7, 2003).

61.    In this case, the Sungale Defendants' willfulness is established by their ongoing efforts to sell and distribute Counterfeit Products following Philips' cease-and-desist letters, the seizures by the U.S. Marshals Service, and this Court's TRO and preliminary injunction.

62.    Statutory damages are meant to discourage willful infringement to any degree.

63.    Statutory damages also allow plaintiffs to recover a more just compensation when proof of actual damages is difficult to establish.  *See, e.g., F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 231 (1952) (statutory damages provide relief to victims of copyright infringement where it is difficult to prove damages).

64.    The Sungale Defendants have obstructed discovery to the point that a finding of statutory damages which merely mirrored the evidence of actual damages would mock Plaintiff's attempt to protect its trademark, and applaud the Sungale Defendants' obstruction.  Therefore, statutory damages allow for the Court to give a justifiably more substantial recovery to Plaintiff.

65.    Therefore, the Court concludes that $1,000,000 statutory damages is merited.

### iii.  Plaintiff is Entitled to Reasonable Attorney Fees and Costs

66.    Because Plaintiff elected to pursue statutory damages, attorney fees cannot be granted pursuant to 15 U.S.C. 1117(a) or (b).  *K & N Eng'g, Inc. v. Bulat*, 510 F.3d 1079, 1082–83 (9th Cir. 2007).

67.    However, Plaintiff is entitled to reasonable attorney fees and costs for successfully bringing a claim for deceptive trade practice.  *See* Nev. Rev. Stat. § 41.600.

AO 72
(Rev. 8/82)

68.     Plaintiff's record of attorney fees submitted to the Court with the Sungale Default Judgment Motion was inadequate.  The Court therefore allowed Plaintiff to re-submit a record of attorney fees and costs.  Plaintiff has submitted that record (Dkt. #907), and the Sungale Defendants have filed their Opposition (Dkt. #909).  Plaintiff has until July 8, 2008, to Reply to the Sungale Defendants' Opposition.

**D. Conclusion**

69.     Any conclusion of law which is more properly a finding of fact, and any finding of fact which is more properly considered a conclusion of law, shall be considered as such.

<u>DECISION</u>

Based upon the foregoing, it is the decision of the Court that Plaintiff Koninklijke Philips Electronics N.V., have judgment against Defendants Sungale Group, Inc., Sungale Electronics (Shenzhen), Ltd., and Amoisonic Electronics, Inc., for which they are jointly and severally obligated, in the amount of $1,000,000 in statutory damages.  The Court finds that Plaintiff is entitled to recover its attorney fees and costs; the Plaintiff has until July 8, 2008, to Reply to the Sungale Defendants' Opposition (Dkt. #909).

Dated:  July 1, 2008.

_____
**ROGER L. HUNT**
**Chief United States District Judge**

AO 72
(Rev. 8/82)